UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA, | : DOCKET NO.<br>: 3:02 CV 1966 (AVC)<br>: |
| Plaintiffs, | : |
| V. | : |
| LOCAL TOWING INC., GEORGE GARDELLA, JESSICA HELQUIST-GARDELLA and JAMES GARDELLA, | : |
| Defendants/Third-Party Plaintiffs | : MARCH 26, 2004 |
| V. | : |
| ASSOCIATED INSURANCE AGENCY, INC., FREDERICK. J. SMITH, AFNY, INC., ASSOCIATED FACILITIES OF AMERICA LTD., MELWAIN ENTERPRISES, INC., CHARLES ASSOCIATES, P.C., AND CHARLES SAPOCHETTI, | : |
| Third-Party Defendants. | : |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Safeco Insurance Company of America ("Safeco") and General Insurance Company of America ("General") (collectively the "Surety"), by their attorneys, Torre Lentz Gamell Gary & Rittmaster, LLP, respectfully submits this memorandum in support of its motion pursuant to Fed. Rule Civ. P. 56, for summary

83363 v1

judgment against Defendants Local Towing Inc. ("Local Towing") and James Gardella ("Gardella"), (collectively the "Indemnitors") to recover, (i) $599,979.75, representing the undisputed, un-reimbursed payments made to subcontractors and suppliers, and (ii) determining liability for the attorneys' fees and expenses incurred by the Surety as a result of issuing bonds on behalf of Local Towing (including fees incurred in defending against claims and in prosecuting the Surety's indemnity rights), with the amount to be determined on inquest.

At the May 29, 2003 Prejudgment Remedy Hearing before Judge Alfred V. Covello the attorney for Indemnitors, Duncan Hume, admitted on the record that the payments and outstanding debt in the amount of $599,979.75 as detailed by Safeco in its hearing exhibits were legitimate and accurate (see May 29, 2003 Hearing Transcript pages 85 and 86 -  Annexed as Exhibit 1 to the Affidavit of Ira Sussman, a Claims Administrator of the Surety, sworn to March 18, 2004 (the "Sussman Affidavit") is a copy of pages 85 and 86 of the Hearing Transcript)  Accordingly, in light of this admission, the Surety is not submitting with this motion the copies of the checks, letters, recoveries, etc. regarding the undisputed $599,979.55 debt.

The Nature of This Action

It is respectfully submitted that the background facts are fully set forth in the Sussman Affidavit and no constructive purpose would be served by setting forth these

facts at length.

The Indemnity Agreement

The Indemnitors executed and delivered to the Surety a General Agreement of Indemnity ("GAI")[1]. Annexed as Exhibit 1 to the Sussman Affidavit is a copy of the GAI. The GAI provides, in pertinent part, as follows:

> THIS AGREEMENT IS MADE by the Undersigned in favor of the SAFECO Insurance Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which any SAFECO Insurance Company now is or hereafter becomes Surety for any of the following as Principal: LOCAL TWOING, INC.
>
> In consideration of the execution of any such Bonds for Contractor and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.
>
> * * *
>
> Indemnity To Surety: Undersigned agrees to pay to Surety upon demand:
>
> 1.  All loss and expense, including reasonable attorney fees incurred by the Surety by reason of having executed any Bond or incurred by it on account of any breach of this agreement by any of the Undersigned;
>
>     In addition the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the

---

[1] There were two other individual indemnitors who executed the GAI, George Gardella and Jessica Helquist-Gardella. This motion is brought against James Gardella, individually, and the corporate indemnitor, Local Towing. As indicated in the second paragraph of the GAI, the agreement was executed by the indemnitors jointly and severally. George Gardella and Jessica Helquist-Gardella have recently declared bankruptcy, therefore, the Surety by this motion is pursuing its rights solely against the remaining indemnitors, James Gardella and Local Towing.

83363 v1

       date of each disbursement;

2.     An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;

* * *

General Provisions:

* * *

5.     The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).

Argument

## POINT I

### THE INDEMNITORS ARE LIABLE FOR THE $599,979.75 OF UN-REIMBURSED PAYMENTS TO SUBCONTRACTORS AND SUPPLIERS UNDER THE INDEMNITY AGREEMENT

As set forth above, under the GAI, the Indemnitors agreed to indemnify the Surety against all loss, costs and expense incurred as a result of issuing surety bonds on behalf of Local Towing. Connecticut courts have confirmed the enforceability of indemnity agreements such as the one present. The Superior Court of Connecticut in <u>Actstar Insurance Company v. Door Wizard, LLC</u>, 2002 WL 31375029 (Conn.Super) held that an indemnity agreement similar to that in the present case was valid and enforceable and granted the surety's application for prejudgment remedy on the basis of a breach of the indemnity agreement. There the court stated:

> Further, the court agrees with the plaintiff that an actual loss need not be sustained by the surety before a claim for indemnification were made. "Generally, indemnity agreements fall broadly into two classes, those where the contract is to indemnify against liability and those where it is to indemnify against loss. In the first, the cause of action arises as soon as liability is incurred, but in the second it does not arise until the indemnitee has actually incurred the loss ... Where an indemnity agreement, however, indemnifies against liability as well as against loss ... the indemnitee does not have to wait until the loss occurs, but may sue on the agreement as soon as liability is incurred." <u>24 Leggett Street Limited Partnership v. Beacon Industries, Inc., 239 Conn. 284, 306, 685 A.2d 305 (1996)</u>. The contractual obligation arises on mere liability even prior to loss. <u>Balboa Ins. Co. v. Zalenski, 12 Conn.App. 529, 534-35, 532 A.2d 973</u>, cert. denied, <u>206 Conn. 802, 532 A.2d 1315 (1987)</u>. To reach this conclusion, the court construes both the bond and the indemnity

agreement together, as the issuance of the bond is directly connected to and integrally intertwined with the indemnity agreement. One without the other is not complete and the indemnity agreement repeatedly refers to the bond and its obligations.

In the present case, the GAI protects the surety against both liability and loss and the Surety has sustained losses relative to the payments made to the subcontractors and suppliers on the Projects.

At the Prejudgment Remedy Hearing held on May 29, 2003 before Judge Alfred V. Covello regarding this matter the attorney Indemnitors, Duncan Hume, admitted on the record that the payments as detailed by Safeco in its hearing exhibits were legitimate and accurate. (see May 29, 2003 Hearing Transcript pages 85 and 86 annexed as Exhibit 1 to the Sussman Affidavit)

The Supreme Court of Connecticut in <u>Leonard Concrete Pipe Company v. C.W. Blakeslee & Sons, Inc.</u>, 178 Conn. 594, 424 A.2d 277 (1979), generally held that indemnity agreements are valid and enforceable. Likewise, the Appellate Court of Connecticut in hearing an appeal regarding a statute of limitations issue in <u>Balboa Ins. Co. v. Zaleski</u>, 12 Conn.App. 529, 532 A.2d 973, cert denied, 206 Conn. 802, 532 A.2d 1315 (1987), generally held that an indemnity agreement similar to that in the present case was valid and enforceable, although the court went on to find that the action to enforce the indemnity agreement was barred by the statute of limitations.

The Second Circuit and several other courts in dealing with collateral security

provisions contained in indemnity agreements such as the one present have confirmed the enforceability of the indemnity agreements. United States Fidelity & Guaranty Co. v. J. United Electrical Contracting Corp., et al., CV 99-0551, 1999 U.S. Dist. LEXIS 12504 (E.D.N.Y. 1999) (where the District Court ordered specific performance by way of a mandatory injunction of a collateral security provision nearly identical to that in the present case thereby requiring the Defendants to post collateral upon the Surety's demand); American Motorists Ins. Co. v. United Furnace Co., 876 F.2d 293, 302 (2d Cir. 1989); American Motorists Ins. Co. v. Pennsylvania Beads Corp., 983 F. Supp. 437, 440 (S.D.N.Y. 1997).

Several recent cases in New York dealing with similar indemnity provisions have found such agreements valid and enforceable. Int'l Fidelity Ins. Co. v. Spadafina, 192 A.D.2d 637, 596 N.Y.S.2d 453 (2d Dep't 1993) (holding that "Courts have upheld the validity of such contractual arrangements and have ruled that payments made by sureties under such provisions are scrutinized only for good faith and reasonableness as to amount paid" Id. at 639); Lori-Kay Golf, Inc. v. Lassner, 61 N.Y.2d 722, 460 N.E.2d 1097, 472 N.Y.S.2d 612 (Ct. App. 1984) (holding that an indemnity agreement was valid and enforceable); Bib Constr. Co., Inc. v. Fireman's Ins. Co. of Newark, New Jersey, 214 A.D.2d 521, 625 N.Y.S.2d 550 (1st Dep't 1995) (holding that, "in the absence of any indication of fraud or collusion" plaintiff was required to indemnify the surety pursuant to the terms of an indemnity agreement); and General Accident Ins. Co. of America v.

Merritt-Meridian Constr. Corp., 975 F. Supp 511 (S.D.N.Y. 1997) (holding that indemnity agreements are, "valid and enforceable under New York law" and are limited only by the sureties obligation to settle claims in good faith).

POINT II

THE INDEMNITORS HAVE BREACHED
THEIR OBLIGATIONS UNDER THE GAI

Connecticut courts have found that a party has established a cause of action for breach of contract where it has demonstrated: (1) the existence of a contract; (2) the existence of an obligation on the part of the defendant; (3) a breach of that obligation by the defendant; and (4) damages to the plaintiff. Qualitative Reasoning Sys., Inc. v. Computer Scis. Corp., No. 3:98CV554, 2000 U.S. Dist. LEXIS 17283, at *26-28 (D. Conn. Mar. 31, 2000) (granting application for prejudgment remedy based upon probable cause finding that party would prevail on breach of contract claim); Underkofler v. Community Health Care Plan, Inc., No. 3:87-cv-534, 1999 U.S. Dist. LEXIS 10515, at *10 (D. Conn. June 17, 1999) (setting forth elements of breach of contract); Haynes Constr. v. Dorce.

There cannot be any dispute that the GAI is a valid contract between the Surety and the Indemnitors. There similarly cannot be any question as to the validity of the indemnity provision and the obligations of the Indemnitors arising thereunder. As a New York State Court stated in enforcing a similar provision, "[T]he subject provision

specifically states that the amount of the deposit is at the 'sole discretion' of the surety. So long as the sum demanded is reasonable, plaintiff 'dealing at arm's length with relative equality of bargaining power' must abide by this term of the contract." Bib, 214 A.D.2d at 523, 625 N.Y.S.2d at 552 (citations omitted); see also USF&G v. J. United Electrical Contracting Corp. (where the District Court relied upon BIB in holding a collateral security provision valid and enforceable); Pennsylvania Bead, 983 F. Supp. at 440-41 (rejecting argument that collateral security provision is void as contrary to public policy).

The fact that the Surety has substantially performed its obligations under the GAI is beyond dispute. The Surety issued bonds on behalf of Local Towing, enabling Local Towing to secure the contracts for the Projects referenced in such bonds. Subcontractors and suppliers on the Projects presented claims under the bonds on which the Surety was obligated to make payments. More importantly, the Surety demanded on numerous occasions, orally and in writing that the Indemnitors comply with the terms of the GAI and the Surety has been damaged in the amount of $599,979.75 plus attorney's fees.

## POINT III

### THE SURETY IS ENTITLED TO ATTORNEYS' FEES AND EXPENSES, WITH THE AMOUNT TO BE DETERMINED AT INQUEST

As set forth above, the GAI provides for recovery of attorneys' fees incurred as a

result of issuing bonds, as well as attorneys' fees incurred as a result of Indemnitors default or breach of the GAI. There is no dispute that the Indemnitors are in default by reason of the Surety's un-reimbursed payments made on behalf of Local Towing. Case law confirms that the surety is entitled to recover its attorneys' fees, including the attorneys' fees incurred in bringing the instant action. <u>Republic Ins. Co. v. Pat DiNardo Auto Sales, Inc., 44 Conn.Supp. 207, 678 A..2d 516 (1995); Burr v. Lichtenheim, 190 Conn. 351, 460 A.2d 1290 (1983)</u>.

## POINT IV

### THE AFFIRMATIVE DEFENSES AND COUNTECLAIMS SET FORTH IN THE DEFENDANTS' ANSWER DO NOT RAISE ANY GENUINE ISSUES OF FACT

The Defendants' Answer ("Answer") to the Complaint in this matter alleges several affirmative defenses (13) and two counterclaims which do not raise any genuine issue of triable fact.

a)  <u>Key Man Life Insurance (Affirmative Defenses #1 and 4 and Counterclaim #1[2])</u>

The Defendants' make the conclusory assertion that the Surety was under an obligation and that there was a precondition to the issuance of the Bonds that required the Surety to obtain key man life insurance on the life of Francis Empey. There is no basis for this assertion. Nowhere in the GAI, the Bonds, or elsewhere in a contract, agreement

---

[2] For ease of reference rather than citing the full title of each of the affirmative defenses and counterclaims as set forth in the Answer, we will reference the affirmative defenses as 1 through 13 and counterclaims as 1 and 2 as they appear consecutively in the Answer.

83363 v1         10

or otherwise is there a provision which contains such an obligation or precondition.

b)       Breach of Good Faith and Fair Dealing (Affirmative Defense #2)

The Answer alleges that the Surety had knowledge of the alleged "notorious" reputation of the United Stated Virgin Islands ("USVI") in performing its contract in a commercially unreasonable fashion and failed to warn the Indemnitors, and therefore, the Surety allegedly breached an obligation to act in good faith and fair dealing. This conclusory assertion is simply without merit.

c)       Improper Claims Handling (Affirmative Defenses #3 and #4)

Based upon the admission of the Indemnitors attorney on the record during the May 29, 2003 Prejudgment Remedy Hearing that the payments and outstanding debt in the amount of $599,979.75 as detailed by Safeco in its hearing exhibits were legitimate and accurate, it is respectfully submitted that the Indemnitors have withdrawn their claim of improper claims handling by the Surety.  (see May 29, 2003 Hearing Transcript pages 85 and 86 annexed as Exhibit 1 to the Sussman Affidavit)

d)       GAI Void as to Jessica Helquist-Gardella (Affirmative Defense #5)

As this motion does not seek summary judgment against Jessica Helquist-Gardella, we respectfully submit that this defense does not need to be addressed.

83363 v1                                                                11

e)     Discharge of James Gardella's GAI Obligations (Affirmative Defense #6)

The Indemnitors allege that the Surety somehow released James Gardella from his obligations under the GAI by altering an alleged "original contract" between the Surety and James Gardella for the issuance of bonds by the Surety on behalf of Local Towing. This release was allegedly affected through the Surety's act of issuing bonds beyond those that were originally contracted. This allegation is likewise without merit and is evident from the Defendants' failure to cite to such an agreement or append such a document. The only contract or agreement between the Surety and the Indemnitors relevant to the present litigation is the GAI, which deals with the Indemnitors obligations to indemnify the Surety. As cited above, the first paragraph of the GAI which was executed by James Gardella indicates that it was made for the purpose of indemnifying the Surety from all loss and expense in connection with <u>any</u> bonds for which the Surety <u>now or hereafter</u> becomes surety on behalf of Local Towing, as principal. There is no provision contained in the GAI which purports to limit those bonds for which James Gardella or the other Indemnitors will be liable as indemnitors, in fact the first paragraph of GAI specifically indicates contradicts this allegation.

f)     Failure of Consideration (Affirmative Defenses #7, 9, 10, 13)

The allegation that "new bonds" were issued by the Surety without any "new consideration" lacks merit based on the provisions set forth in the GAI. As cited above,

83363 v1                                    12

the second paragraph of the GAI indicates that the GAI is given in consideration of the execution of <u>any</u> such bonds for Local Towing and as an inducement to such execution by Surety. Likewise, the allegation that James Gardella was not a "compensated indemnitor" with regard to the Bonds and that there was an absence of consideration is irrelevant. There is no provision in the GAI which requires the Indemnitors be "compensated" in order for their obligations thereunder to arise.

g)  <u>Issuance of Bonds Without Approval of James Gardella (Affirmative Defense #8)</u>

The Indemnitors' allegation that James Gardella limited any obligations he may have had under the GAI to bonds which he approved lacks any merit. As cited above, the GAI indicates that the obligations of the Indemnitors are joint and several with regard to <u>any</u> bonds on which Safeco or General <u>now or hereafter becomes</u> surety. The language does not contemplate or indicate that the obligations of the Indemnitors arise only for those bonds issued with the Indemnitors approval, the language indicates the complete contrary.

h)  <u>Unilateral Mistake of the Surety (Affirmative Defense #9)</u>

The allegation that any reliance of the Surety in issuing the Bonds on the consideration given by James Gardella in execution of the GAI was a unilateral mistake on the part of the Surety is completely without merit for the same reasons set forth in paragraphs (e) through (g) above.

Conclusion

For the reasons set forth above and based upon the admissions of the Indemnitors, it is respectfully requested that the Court grant to Surety summary judgment against Local Towing Inc. and James Gardella with respect liability for (1) the Surety's unreimbursed payments of $599,979.75 plus interest from the date of each disbursement; (2) the Surety's reasonable attorneys fees in an amount to be determined by the Court; and (3) such other and further relief as this Court deems just and proper.

Dated: Jericho, New York
    March 26, 2004

                                            Respectfully submitted,

                                            TORRE LENTZ GAMELL GARY
                                            & RITTMASTER, LLP

                                            By: _____
                                                 Benjamin D. Lentz   (BL 4860)

                                            A Member of the Firm
                                            Counsel for Plaintiffs
                                            Safeco Insurance Company of America
                                            General Insurance Company of America
                                            100 Jericho Quadrangle, Suite 309
                                            Jericho, New York 11753-2702
                                            (516) 240-8900

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was sent via regular mail on this date to the following:

Duncan B. Hume, Esq.
Attorneysfor Defendants and Third-Party Plaintiffs
Hume & Associates
One Landmark Square
Stamford, CT 06901

James L. Brawley, Esq.
Tracey M. Lane Russo, Esq.
Attorneys for Associated Insurance Agency, Inc.
Morrison, Mahoney & Miller, LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06106

James J. Farell, Esq.
Attorneys for the Defendants and Third-Party Plaintiffs
8 Elm Street
Norwalk, CT 06850

Dianna D. McCarthy, Esq.
Attorneys for Third-Party Defendant Melwain Enterprises, Inc.
Winget Spadofora & Schwartzberg, LLP
183 N. Broad Street
Milford, CT 06460

Luigi Spadofora, Esq.
Winget Spadofora & Schwartzberg
45 Broadway, 19th Floor
New York, NY 10006

Dated:   Jericho, New York
         March 26, 2004

Benjamin D. Lentz