

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------x
SAFECO INSURANCE COMPANY OF              DOCKET NO.
AMERICA and GENERAL INSURANCE
COMPANY OF AMERICA,                      302CV1966-AVC

        Plaintiffs

   v.

LOCAL TOWING INC., GEORGE GARDELLA,       July 14, 2005
JESSICA HELQUIST-GARDELLA, and
JAMES GARDELLA,

        Defendants.
------------------------------------------------------------x

LOCAL TOWING INC., GEORGE GARDELLA,
JESSICA HELQUIST-GARDELLA, and
JAMES GARDELLA,

        Third-Party Plaintiffs

   v.

ASSOCIATED INSURANCE AGENCY, INC.,
FREDERICK J. SMITH, AFNY, INC., MELWAIN
ENTERPRISES, INC., WAYNE PRICE, MARYANNE
PRICE, and ERIC EMPEY,

        Third-Party Defendants
------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## Introduction

This action is by two sureties to enforce an indemnity agreement against the principal and the indemnitors on certain bonds that were issued in connection with two marine construction projects in the Caribbean, one project in Puerto Rico and one project in the U.S. Virgin Islands. This motion is made by one of the alleged indemnitors, James R. Gardella, and is based on the failure of Safeco Insurance Company and General Insurance Company (hereinafter "Safeco" or "the sureties") to enter into an agreement with James R. Gardella, to indemnify the sureties for the bonds they were issuing.

Under the law of Connecticut, sureties must give notice to a prospective indemnitor that they are issuing bonds and relying on that indemnitor's offer of indemnity in order to bind the indemnitor. This was not done by the sureties for any of the bonds that are the subject matter of this litigation or for two earlier series of bonds that were issued at the request of Local Towing, Inc.

## Factual Basis for Motion

Local Towing, Inc. was a dredging contractor that needed a bid bond, a performance bond, and a payment bond in order to bid on and complete a project known as the "Pentagon Boat Basin Job" in Arlington, Virginia. James R. Gardella's affidavit, submitted with this motion, states that in 1999, Local Towing, Inc. made arrangements to have the plaintiffs issue the bonds for that job. To issue of those bonds, the sureties required that a General Agreement of Indemnity be executed by Local Towing, Inc., James R. Gardella, and others. The General Agreement of Indemnity in pertinent part states:

THIS AGREEMENT IS MADE BY THE Undersigned in favor of the SAFECO Insurance Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which any SAFECO Insurance Company now is or hereafter becomes Surety for any of the following as Principal: LOCAL TOWING INC.

At the time that job was bid and the agreement signed, the sureties had agreed to issue the bonds for the Pentagon Boat Basin Job. The General Agreement of Indemnity was executed on October 6th of 1999, and the bonds for the Pentagon Boat Basin Job were issued shortly thereafter. The issue before the court is whether the General Agreement of Indemnity is an agreement, as the plaintiffs claim it to be, or an offer of indemnity that requires a more definite agreement and that acceptance be communicated to an indemnitor.

Following the successful completion of the Pentagon Boat Basin Job, Local Towing, Inc. bid on two jobs in San Juan, Puerto Rico. At no time did the sureties notify James R. Gardella that they were issuing bonds for those projects. Later, in April of 2000, Local Towing, Inc. bid on a job in Aguadilla, Puerto Rico and a job in St. Thomas, U.S. Virgin Islands. Again, the sureties did not notify James R. Gardella that they were issuing bonds based on his offer of indemnity. The claims that arose under the bonds for the jobs in Aguadilla and St. Thomas are the losses that serve as the basis for the current litigation.

There is no dispute between the sureties and James R. Gardella as to the facts as above alleged. It is without question that the General Agreement of Indemnity was signed on October 6, 1999, that the sureties issued bonds for Local Towing, Inc. covering jobs in San Juan and Aguadilla, Puerto Rico and St. Thomas, U.S. Virgin Islands, and that the sureties never gave James R. Gardella notice or had any communications with him that

3

they were issuing any of those bonds or that they were relying on him as an indemnitor. The affidavit of James R. Gardella is submitted with this motion to substantiate the facts above alleged and to show the court that he had no interest or reason in being an indemnitor for the sureties on any of the jobs of Local Towing, Inc. after the Pentagon Boat Basin Job.

### POINT ONE

**It has long been the law of Connecticut that an indemnitee must give notice of the acceptance of an offer of indemnity and details of the obligations undertaken to make an indemnity agreement enforceable.**

There are many situations in which an offer of indemnity is made. In most of those situations, the amount is known when the offer of indemnity is made, and there is certainty that the indemnity will be relied upon. When the amount of the obligation is not known at the time the offer of indemnity is made, will there be an enforceable contract when the offeror is not told the extent of his potential liability?

This is not an issue often litigated in recent times. In *Rapelye v. Bailey*, 3 Conn. 438 (1820), the Supreme Court of Errors held that if there is to be an uncertain amount of debt to be incurred in the future which one party expects to be assumed by a third party, then notice is required to that third party. Otherwise, the indemnitor would not know the extent of his liability, if any. Here, James R. Gardella never knew the extent of the liability the plaintiffs might want to claim.

Requiring that notice be given to a prospective indemnitor is only a logical application of two of the most basic rules of contract law: that a contract must be

sufficiently specific to be enforceable and that notice of acceptance must be given to the offeror in order for there to be a contract.

The first rule, requiring certainty, can be seen in another financial area in the case of *Suffield Development Associates Limited Partnership v. Society of Savings*, 243 Conn. 832, 708 A.2d 1361 (Conn. 1998). In that case, a developer thought that he had a contract for a future loan on a project that he was then working on. The problem was that there was not a definite and certain loan amount. There had been an estimate as to the cost of the commercial real estate development, but there was no definite amount, and therefore an essential element of the contract was missing.

In its decision, the court affirmed an earlier decision and cited the Restatement (Second) of Contracts:

> Under established principles of contract laws, "an agreement 'must be definite and certain as to its terms and requirements." *Presidential Capital Corp. v. Reale*, 231 Conn. 500, 506, 652 A.2d 489 (1994); 1 Restatement (Second), Contracts § 33, comment (e), p. 94 (1981).

In the present case before the court, not only was the amount of any financial obligation unknown, but also the nature of the risks was not known. James R. Gardella did not know of any financial obligation that the plaintiffs might seek to enforce.

The second rule, requiring notice of acceptance, is also quite clear as the Supreme Court of Connecticut held in *Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co.*, 159 Conn. 242, 268 A.2d 391 (1970):

> It is elementary that to create a contract there must be an unequivocal acceptance of an offer... The acceptance of the offer must, however, be explicit, full and unconditional. *Woodbridge Ice Co. v. Semon Ice Cream Corporation*, 81 Conn, 479, 487, 71 A. 577. And the burden rested on the plaintiff to prove a meeting of the minds to establish its version

5

of the claimed contract. *Lucier v. Town of Norfolk,* 99 Conn. 686, 699, 122 A. 711.

The decision in *Woodbridge Ice Co. v. Semon Ice Cream Corporation,* 81 Conn. 479, 71 A. 577 (1909) is explicit in its discussion of the necessity for an agreement as to the terms and acceptance of a contract. The court held:

> Where terms for changing the legal relations between two parties are offered by one party to another, those terms must be explicitly, fully, and unconditionally accepted to effect such change of relations and constitute a binding contract. 81 Conn. 479 at 487, 71 A. 577 at 579-80.

In the matter now before the court, there has been no compliance with either the rule that there must be an acceptance of an offer for there to be a contract or the rule that the contract must have terms that the parties have accepted.

In the situation where an indemnity contract is before the court, there can be no contract until and unless there is an agreement on the timing of the indemnity and the amount and conditions of the debt. Because these terms remained open at the time of the execution of the General Agreement of Indemnity, there is no obligation to indemnify until there is an acceptance of those terms.

As the court noted in *Rapelye, supra,* the purpose of the notice is to give the offeror, the putative indemnitor, the opportunity to withdraw his offer. The notice that the court speaks of is the acceptance on the offer to indemnify with all the necessary terms. As that acceptance is a counter-offer due to its inclusion of new terms, *Cavallo v. Lewis,* 1 Conn. App. 519, 473 A.2d 338 (1984), the indemnitor has the right to accept or reject the counter-offer.

6

The court confirmed its position concerning a continuing offer of indemnity some eighteen years after *Rapelye, supra,* in *Craft v. Isham,* 13 Conn. 28 (1838), when it held that if there were a certainty of amount and event, then notice would not be required. In the relationship between the present parties to the litigation, the sureties did not have to give notice and would not be expected to give notice as to the bonds for the Pentagon Boat Basin Job. The General Agreement of Indemnity was executed so those bonds could be issued.

In two cases in the 1840's, *New Haven County Bank v. Mitchell,* 15 Conn. 206 (1842) and *Bushnell v. Church,* 15 Conn. 406 (1843) the court continued to recognize the rule when it held that if the agreement to accept is contemporaneous with the execution of the indemnity agreement there is no need for notice. By stating the exception to the rule, the court reconfirmed that if the event and the amount are unknown, notice must be given for there to be an indemnity contract.

In the twentieth century, the court in Connecticut continued to follow the rule in *Hartford-Aetna National Bank v. Anderson,* 92 Conn. 643, 103 A. 845 (1918) when it held that an indemnitor was not entitled to notice when he knew that the indemnitee, a bank, was going to act immediately on a predefined loan. James R. Gardella did not know that the plaintiffs were issuing bonds for projects that he knew little about, and he never entered into a contract obligating him to indemnify the plaintiffs.

### Point Two

**An uncompensated surety is a favorite of the law, and his obligations should not be extended beyond his agreement to be bound.**

7

The law for many years has been that an uncompensated or gratuitous surety is entitled to have all doubts and technicalities resolved in his favor. This is the rule of strictissimi juris. Under that rule, a gratuitous surety is said to be a favorite of the law. *Becker v. Faber,* 280 NY 146, 10 NE2d 997; reh den 280 NY 730, 21 NE2d 216.

That means is that the surety's obligations under the contract should be strictly construed when there is a gratuitous, or uncompensated, surety. The surety simply assumes no obligations beyond what is found in the strict letter of his contract. *Prairie State National Bank v. United States,* 164 U.S. 227, 41 L. Ed. 412, 17 S. Ct. 142; *Monmouth Lumber Co. v. Indemnity Insurance Company,* 21 N.J. 439, 122 A2d 604.

A surety's obligations cannot be extended by implication to include other contracts not included or expressed in the surety agreement, the General Agreement of Indemnity. Under Connecticut law, contracts to be responsible for the debt, default, or miscarriage of another must be in writing, the Statute of Frauds, Connecticut General Statutes § 52-550. At the time the contract that was entered into in October of 1999, the General Agreement of Indemnity, only the Pentagon Boat Basin Job was being considered. The General Agreement of Indemnity makes no reference to the projects that were bid or the contracts that were entered into months later or the bonds that were issued under those contracts.

The plaintiffs wrote the General Agreement of Indemnity, and they wrote the bonds for Aguadilla and St. Thomas after examining what the risks were that they were assuming under those contracts. The plaintiffs did not, however, make those projects part of any

8

agreement with James R. Gardella, and his obligations may not be extended beyond his agreement to be bound.

## CONCLUSION

James Gardella never agreed to indemnify the plaintiffs for the bonds they issued on behalf of Local Towing, Inc. for the jobs in Aguadilla, Puerto Rico and St. Thomas, U.S. Virgin Islands. The plaintiffs never responded to the offer to indemnify with a counter-offer or acceptance once the scope of the contemplated obligations of Local Towing, Inc. were known and the sureties knew what they were bonding. James R. Gardella never had the opportunity to accept or reject the counter-offer. As there is no agreement between the plaintiffs and James R. Gardella under which he agreed to indemnify the plaintiffs, the motion must be granted.

Duncan B. Hume (CT 05581)
HUME & ASSOCIATES
8 Elm Street
Norwalk, CT 06850
Tel 203-857-4270
Fax 203-838-7221