**EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA, | : : : | DOCKET NO. 3:02 CV 1966 (AVC) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| LOCAL TOWING INC., GEORGE GARDELLA, JESSICA HELQUIST-GARDELLA and JAMES GARDELLA, | : : : | |
| | : | |
| Defendants/Third-Party Plaintiffs | : | MARCH 26, 2004 |
| | : | |
| V. | : | |
| | : | |
| ASSOCIATED INSURANCE AGENCY, INC., FREDERICK. J. SMITH, AFNY, INC., ASSOCIATED FACILITIES OF AMERICA LTD., MELWAIN ENTERPRISES, INC., CHARLES ASSOCIATES, P.C., AND CHARLES SAPOCHETTI, | : : : : : : | |
| | : | |
| Third-Party Defendants. | : | |

**AFFIDAVIT IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) |
| COUNTY OF COOK | ) |

I, Ira Sussman, being duly sworn, hereby depose and say:

1.    I am a Claims Administrator for the Plaintiffs, Safeco Insurance Company of America ("Safeco") and General Insurance Company of America ("General")

(hereinafter together referred to as the "Surety"). In that capacity, I am responsible for processing, investigating and administering claims filed against performance and payment bonds issued by the Surety. Because of such responsibilities, I have personal knowledge of the facts set forth herein.

2.    I make this affidavit in support of the Surety's motion for summary judgment to recover against Local Towing Inc. ("Local Towing") and James Gardella ("Gardella"), (collectively the "Indemnitors"), (i) $599,979.75, representing un-reimbursed payments made to subcontractors and suppliers, and (ii) determining liability for the attorneys' fees, consulting fees and expenses incurred by the Surety as a result of issuing bonds on behalf of Local Towing (including fees incurred in defending against claims and in prosecuting the Surety's indemnity rights), with the amount to be determined on inquest.

3.    On March 14, 2003 and May 29, 2003 I attended hearings in this matter before Judge Alfred V. Covello regarding Plaintiff's motion for a Prejudgment Remedy. At said hearings the Surety presented witnesses and documentation regarding the outstanding debt in the amount of $599,979.75 of the Indemnitors due to the payments made by the Surety on behalf of Local Towing. At the May 29, 2003 Prejudgment Remedy Hearing the attorney for Local Towing, Duncan Hume, admitted on behalf of Local Towing on the record that the payments and outstanding debt in the amount of $599,979.75 as detailed by Safeco in its hearing exhibits were legitimate and accurate. (May 29, 2003 Hearing Transcript at pages 85 and 86). Annexed as Exhibit 1 is a copy of pages 85 and 86 of the Hearing Transcript. Accordingly, in light of this admission, the

2

Surety is not submitting with this motion the copies of the checks, letters, recoveries, etc. regarding the undisputed $599,979.55 debt.

4.    Plaintiff Safeco is a corporation duly authorized and existing under the laws of the State of Washington, and its principal place of business is in Seattle, Washington. At all times material hereto, Safeco was engaged in doing business as an issuer of contract surety bonds.

5.    Plaintiff General is a corporation duly authorized and existing under the laws of the State of Washington, and its principal place of business is in Mahwah, New Jersey. At all times material hereto, General was engaged in doing business as an issuer of contract surety bonds.

6.    Upon information and belief, Defendant Local Towing is a corporation duly authorized and existing under the laws of the State of Connecticut and its principal place of business is 2 Beach Road, Norwalk, CT 06855.

7.    Upon information and belief, Defendant James Gardella is a citizen of the State of Connecticut and resides at 19 Shorehaven Road, Norwalk, CT 06855.

8.    As a condition of, and in consideration for, the issuance of construction performance and payment bonds, on or about October 6, 1999, the Surety required the Defendants to jointly and severally enter into the General Agreement of Indemnity ("GAI") with the Surety in which the Defendants agreed to exonerate and indemnify the Surety in the event of the failure of Defendant, Local Towing, to perform any of its bonded obligations. Annexed as Exhibit 2 is a copy of the GAI.

9.     The Surety, at the request of Local Towing, and in reliance upon Local Towing's execution and delivery of the GAI, issued a Performance Bond and a Payment Bond (Bond No. 6004265) each dated July 26, 2000 on behalf of Local Towing, as principal, in favor of the Government of the Virgin Islands, as obligee, in connection with a contract in the amount of $3,773,000 for a project known as Stalley Bay Ocean Outfall Installation Project in St. Thomas, U.S.V.I. ("St. Thomas Project").

10.    The Surety, at the request of Local Towing, and in reliance upon Local Towing's execution and delivery of the GAI, also issued a Performance Bond and a Payment Bond (Bond No. 6004268) each dated August 1, 2000 on behalf of Local Towing, as principal, in favor of the U.S. Army Corps. of Engineers, as obligee, in connection with a contract in the amount of $964,270 for a project known as Aguadilla Harbor Revetment Project in Puerto Rico ("Aguadilla Project").

11.    Defendant Local Towing encountered financial difficulties on the St. Thomas Project and the Aguadilla Project (the "Projects") and was financially unable to meet its obligations.  As a result, Local Towing requested financial assistance in the form of loans from the Surety in order to complete the Projects.

12.    By letter agreement dated February 15, 2002, Safeco and the Defendants agreed that (a) Safeco would provide the requested financial assistance and (b) Local Towing's failure to meet its obligations on the Projects constituted a "Default" by the Defendants pursuant to the terms of the GAI and (c) the Defendants would repay all funds loaned as a result of this accommodation pursuant to the terms of the GAI.

13. The Surety has received payment bond claims under the above referenced bonds (Nos. 6004265 and 6004268) (the "Bonds") on the Projects from various subcontractors and suppliers.

14. The Defendants agreed to have the owner/obligees, the Government of the Virgin Islands and U.S. Army Corps. Of Engineers (the "Owners"), make all remaining contract payments on the Projects to the escrow account of Torre, Lentz, Gamell, Gary & Rittmaster, LLP (the "Escrow Account") and the Defendants instructed the Owners accordingly. There have been deposits to the Escrow Account from the Owners, as well as deposits to the Escrow Account by the Surety, and disbursements representing payment and performance bond claims.

15. The Surety has also paid from its own accounts additional payment bond claims and expenses with regard to the Surety's obligations under the Bonds on these Projects.

16. The Surety has notified the Defendants of the claims made against the above referenced bonds as well as the other losses incurred by the Surety, including without limitation, their responsibility to indemnify the Surety for all of its losses, costs, expenses and attorneys' fees. Indeed, on or about February 15, 2002 Safeco demanded by letter that, pursuant to the GAI, the Defendants indemnify and deposit with the Surety collateral sufficient to cover all exposure under the Bonds.

17. Despite demand, the Defendants have failed to respond to the Surety's request for indemnification and collateral deposit.

18.    As more fully set forth in the schedule attached hereto as Exhibit 2, as a result of the foregoing, the Plaintiff has received and satisfied claims in the amount $1,210,491.30, received contract balances, retention and change order payments from the Project owners totaling approximately $610,511.55, resulting in a loss, before expenses, of $599,979.75.

19.    The Plaintiffs have incurred attorneys' fees and costs in investigating, processing and paying claims asserted against the above referenced Bonds and in prosecuting the present action.

20.    As also more fully set forth in the schedule attached hereto as Exhibit 3, the total attorney's fees and expenses (including fees incurred in defending against claims and in prosecuting the Surety's indemnity rights) incurred by the Plaintiffs under the General Agreement of Indemnity as of the date of this Affidavit is $93,757.52.

Ira Sussman

On this 18th day of March, 2004, the individual known to me, or sufficiently proven to be, Ira Sussman, attested to the truth of the above statements to the best of her knowledge and signed the foregoing instrument.

Notary Public

"OFFICIAL SEAL"
ADELE GATTUSO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7/6/2006

**EXHIBIT 1**

1    just sort of a custom with respect to how bonding companies in

2    this situation are supposed to behave?

3            THE WITNESS:  My experience, that's the way they're

4    supposed to behave.

5            THE COURT:  I see.

6            THE WITNESS:  Because they don't want to pay any

7    bills that are not rightfully due.  They may get an invoice

8    from somebody that is not legitimate or inflated or so

9    therefore they have to check with somebody on the job to make

10   sure and confirm that it is rightfully due.

11           MR. ANTIPAS:  Your Honor, I'm not sure I'm following

12   this and I've got to say something at this point.  I think I

13   object to this lining of questioning.  I'm not sure where we're

14   going with this.  We have somebody testifying as to the value

15   of a delay claim, now we have testimony from somebody who I

16   don't know is qualified regarding what sureties there are,

17   aren't supposed to do.  He has his personal experiences, I am

18   sure.  I'm just not sure where this is going.  I'd like a --

19           THE COURT:  Well, stick around, we'll find out, but

20   he's telling us that based on his experience the custom of the

21   trade would be that before a surety company or bonding company

22   would make a payment, that they check with the contractor, and

23   two, that they make the timely payment in order to further

24   delay or harm wasn't caused, and that's your opinion.

25           MR. ANTIPAS:  Your Honor, first we have a claim that

1     the surety is overpaid, now it sounds like we're going down the

2     road that the surety has not made payments. I'd like to know

3     what this is for. Is this just testimony for the value of the

4     delay claim, or is Safeco implicated in something? I haven't

5     heard that before.

6           THE COURT: Let him finish, we'll find out.

7           MR. HUME: If I might have one or two more questions.

8     For the record, we are not challenging payments that the

9     bonding company has made. I think we're consistent in that.

10    Whatever payments the bonding company has made to third

11    parties --

12          THE COURT: Were done in due course or done in the

13    proper course of business.

14          MR. HUME: Right. So that's not an issue.

15          THE COURT: So basically we're looking here as a

16    possible setoff, Attorney Antipas, of a 572,000 dollar delay

17    claim.

18          Sir, do you know what happened to the claim? Did the

19    Virgin Islands honor it or have they honored it, or maybe you

20    don't know?

21          THE WITNESS: To my knowledge, they haven't received

22    a check, so that means they haven't honored it. We're working

23    basically on two claims. One was the rock and sand claim,

24    which is the one that just they received payment on.

25          THE COURT: Okay.

**EXHIBIT 2**

FEB.13.2002    6:18PM                                                    NO.098    P.5/13

**SAFECO**

GENERAL AGREEMENT
OF INDEMNITY
FOR CONTRACTORS

SAFECO INSURANCE COMPANY OF AMERICA
GENERAL INSURANCE COMPANY OF AMERICA
FIRST NATIONAL INSURANCE COMPANY OF AMERICA
SAFECO NATIONAL INSURANCE COMPANY
AMERICAN STATES INSURANCE COMPANY
AMERICAN ECONOMY INSURANCE COMPANY
SAFECO PLAZA
SEATTLE, WASHINGTON 98185

THIS AGREEMENT is made by the Undersigned in favor of the SAFECO Insurance Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which any SAFECO Insurance Company now is or hereafter becomes Surety for any of the following as Principal: **LOCAL TOWING, INC.**

In consideration of the execution of any such Bonds for Contractor and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.

DEFINITIONS: Where they appear in this agreement, the following terms shall be considered as defined in this paragraph:

Contractor: Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests, whether alone or in joint venture or as members in limited liability companies with others not named herein.

Bond: Any and all bonds, undertakings or instruments of guarantee and any continuation, extension, alteration, renewal or substitution thereof, whether with the same or different penalties, executed by Surety.

Surety: Any one or combination of the following: SAFECO Insurance Company of America; General Insurance Company of America; First National Insurance Company of America; SAFECO National Insurance Company; American States Insurance Company; American Economy Insurance Company; any person or company joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond.

Contract: Any contract between Contractor and a third party, the performance of which is guaranteed by any Bond for which Surety is surety.

Default: Contractor shall be deemed to be in default under this agreement in the event it:

(1)  Is declared to be in default by the Obligee of any Bond;
(2)  Actually Breaches or abandons any Contract;
(3)  Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
(4)  Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
(5)  If an individual, dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
(6)  Breaches, fails to perform, or comply with, any provision of this agreement.

INDEMNITY TO SURETY:  Undersigned agree to pay to Surety upon demand:

1.   All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.

     In addition the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
2.   An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;
3.   Any original, additional or renewal premium due for any bond.

With respect to claims against Surety:

1.   Surety shall have the exclusive right for itself and the Undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed;
2.   Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims;
3.   Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.
4.   An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

SURETY'S REMEDIES IN EVENT OF DEFAULT:  In event of default by Contractor, Surety shall have the right, at its sole discretion, to:

1    Take possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond;
2.   Take possession of Contractor's or any of Undersigneds' equipment, materials and supplies at the site of the work, or elsewhere, if needed for prosecution of the work, as well as Contractor's office equipment, books and records, and utilize the same in completion of the work under the Contract without payment of any rental for such use;
3    Loan or guarantee a loan to Contractor of such money as Surety shall see fit, for the purpose of completing any Contract, or for discharging Contractor's obligations for labor, material, equipment, supplies and other charges, incurred in connection with any contract;
4.   Take such other action as Surety shall deem necessary to fulfill its obligations under any Bond.

S-0002/SAEF 8/98

® Registered trademark of SAFECO Corporation.

FEB.13.2002 6:19PM notice of ~ ~ default, of the payment of any claim or of the ~ ~ of any loan to Contractor by Surety. Should
Undersigned learn of any clair~. j    against Contractor, for which Surety may be ~ able, Undersigned shall give prompt notice to
Surety of such claim or suit.    NO.098    P.6/13

Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not
bar any subsequent action by Surety.

**SECURITY TO SURETY:** As collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety, the
Undersigned:

1. Assigns to Surety, as of the date of execution of any Bond, all rights of the Contractor in, or in any manner growing out of:
   a. Any Contract or modification thereof;
   b. Any subcontract or purchase order and against any legal entity and its surety who has contracted with Contractor to furnish labor,
      materials, equipment and supplies in connection with any Contract;
   c. Monies due or to become due Contractor on any Contract, including all monies earned or unearned which are unpaid at the time
      of notification by Surety to the Obligee of Surety's rights hereunder;
   d. Any actions, causes of action, claims or demands whatsoever which Contractor may have or acquire against any party to the
      Contract, or arising out of or in connection with any Contract including but not limited to those against obligees and design
      professionals and any surety or sureties of any obligee, and Surety shall have the full and exclusive right, in its name or in the
      name of the Contractor, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of
      action, claims or demands;
   e. Any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion
      of any bonded work;
   f. All monies due or to become due to Contractor on any policy of insurance relating to any claims arising out of the performance of
      any Contract or to premium refunds, including, but not limited to, builders risk, fire, employee dishonesty or workers' compensation
      policies.

   The Surety agrees to forbear exercising the rights granted to it in (a) through (f) until there is a Default under this agreement;

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and
   authority in event of Contractor's default to:
   a. Sign the name of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any
      other paper or contract necessary or desired to carry into effect the purposes of this agreement;
   b. Dispose of performance of any Contract by subletting it in Contractor's name or otherwise;
3. Authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on
   account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first
   proceeding against the Contractor;
4. Agree that all monies earned by Contractor under any Contract are trust funds, whether in the possession of Contractor or otherwise,
   for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of
   such Contract for which Surety would be liable under any Bond on such Contract;
5. Agree that this agreement may at any time be completed and filed by Surety in such a manner that it will qualify as a financing
   statement under the applicable provisions of any statute of any state which has adopted The Uniform Commercial Code, and that
   Surety may add such schedules to this agreement, describing specific items of security covered hereunder as shall be necessary under
   such statutes.

**GENERAL PROVISIONS:**

1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Undersigned to
   Surety even though any such assent by the Surety does or might increase the liability of the Undersigned.
2. Surety has the right to decline to execute, provide or procure any bond requested by Contractor. If Surety does execute, provide or
   procure the execution of a bid bond or proposal bond, or agrees or consents to provide such contract of suretyship, Surety retains the
   right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be
   required in connection with any award that may be made under the bid proposal or tender to which the bid proposal bond or
   agreement or consent to provide such contract of suretyship is given.
3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of
   exoneration and the right of subrogation.
4. Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the
   right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining,
   copying or reproducing them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the
   Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing
   business with the undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may
   furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to
   other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or
   companies.
5. The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such
   discharge is unattainable, the Undersigned shall, if requested by Surety, either deposit collateral with Surety, acceptable to Surety,
   sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded
   obligation(s).
6. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.
7. In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not
   in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision
   of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.
8. Execution by Contractor or any of the Undersigned on any application for any Bond or of any other agreement of indemnity in behalf
   of Contractor, or the taking of indemnity of any other person by Surety with respect to any Bond of Contractor, shall in no way be
   deemed to waive, diminish or abrogate any rights of Surety under this agreement.
9. The Undersigned waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all
   obligations to the Surety under this agreement, at law or in equity, have been satisfied in full.
10. The rights and remedies afforded to the Surety by the terms of this agreement and the terms themselves may not be waived or
    modified orally and no written change or modification shall be effective until signed by an employee of the Surety.
11. This agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety.
12. All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record
    storage and retention program shall be as effective as the original for all purposes.

FEB. 13. 2002    6:20PM                                                    NO. 098    P. 7/13

**TERMINATION:** This agreem___ ___a continuing obligation of the Undersigned unl___ ___rminated as provided in this paragraph. A___ Undersigned desiring to terminate liability as to future Bonds of Contractor must:

1.    Give written notice to Surety at Seattle, Washington 98185, by certified or registered mail, of such termination;
2.    State in such notice the effective date of such termination (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.
3.    It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

After the effective date of termination, the Undersigned giving notice shall be liable hereunder for:

1.    Bonds executed or authorized prior to such date, and renewals and extensions thereof;
2.    Bonds executed pursuant to a bid or proposal bond executed or authorized prior to such date, and renewals and extensions thereof.

Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

EXECUTED this _____ 6th _____ day of _____ October _____, _____ 1999 _____

LOCAL TOWING, INC. _____

Attest: _____          By: _____
James Gardella, Secretary                    George Gardella, President

                                             X _____
                                             James Gardella, Individually

Without in any way diminishing the indemnity of any other signators to this agreement, it is understood and agreed that the indemnity if the undersigned shall exclude:

1. Residence at 41 Turkey Plain Road, Bethel, Connecticut 06801

                                             X _____
                                             George Gardella, Individually

                                             X _____
                                             Jessica Helqvist-Gardella, Individually

---

**ALL SIGNATURES MUST BE ACKNOWLEDGED.**

INDIVIDUAL ACKNOWLEDGMENT

STATE OF  Connecticut
COUNTY OF  Fairfield
On this  10th  day of  October  ,  1999  , before me personally appeared George Gardella and
Jessica Helqvist-Gardella                                                    , to me known and known to be the person
described in and who executed the foregoing agreement and acknowledged that  they executed the same for the purposes, considerations
and uses therein set forth as  their  free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)                              Notary Public, residing at  MARGARET V. CASTANGO
                                    (Commission expires  NOTARY PUBLIC
                                    MY COMMISSION EXPIRES JAN. 31, 2004

LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF
COUNTY OF
On this                    day of                    ,              , before me personally appeared
                              of                                          , to me known to be the (a)
acknowledged said instrument to be the free and voluntary act and deed of said Limited Liability Company executing the foregoing instrument, and
mentioned and on oath stated            signed said instrument by authority of the Limited Liability Company's operating agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)                              Notary Public, residing at
                                    (Commission expires

CORPORATE ACKNOWLEDGMENT

STATE OF  Connecticut
COUNTY OF  Fairfield
On this  1st  day of  October  ,  1999  , before me personally appeared George Gardella and
James Gardella                                                              , to me known to be the
President                              and Secretary                of  LOCAL TOWING, INC.
the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said
corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it
they    executed said instrument by order of the Board of Directors of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)                              Notary Public, residing at  MARGARET V. CASTANGO
                                    (Commission expires  NOTARY PUBLIC
                                    MY COMMISSION EXPIRES JAN. 31, 2004

CORPORATE ACKNOWLEDGMENT

STATE OF
COUNTY OF
On this                    day of                    ,              , before me personally appeared
                              and                        of                              , to me known to be
the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said
corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it
            executed said instrument by order of the Board of Directors of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)                              Notary Public, residing at
                                    (Commission expires

IF ADDITIONAL ACKNOWLEDGEMENTS ARE NEEDED
USE S-802 (INDIVIDUAL) OR S-803 (CORPORATE)

S-8003/SAEF 6/98

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Connecticut___

COUNTY OF ___Fairfield___ } ss

On this ___5th___ day of ___November___ , ___1999___ , before me personally appeared
James Gardella
to me known and known to be the person described in and who executed the foregoing agreement and acknowledged that
he ___ executed the same for the purposes, considerations and uses therein set forth as ___his___ free and
voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(Seal)

Notary Public, residing at _____

(Commission expires _____ )

MARGARET V. CASTANGO
NOTARY PUBLIC
MY COMMISSION EXPIRES JAN. 31, 2004

All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by
Surety as part of its record storage and retention program shall be as effective as the original for all purposes.

S-0800-5355 (i/99)

EXHIBIT 3

**1) Claims Paid**

| Date | Check # | Description | Origin Account | Reference | Disbursement |
|---|---|---|---|---|---|
| 02/28/02 | 16755 | Isco Industries | Safeco | Contractor Payment | 71,828.70 |
| 03/19/02 | 1001 | W.O. Grubb | TLGGR | Contractor Payment | 100,330.00 |
| 03/19/02 | 1002 | DevCon | TLGGR | Contractor Payment | 275,778.78 |
| 03/27/02 | 17931 | Titan Caribbean Contractors - Aguadilla | TLGGR | Contractor Payment | 20,000.00 |
| 04/15/02 | 17931 | Flexifloat | Safeco | Contractor Payment | 84,297.00 |
| 04/18/02 | 1003 | Luis Roman - Aguadilla | TLGGR | Contractor Payment | 1,537.53 |
| 04/18/02 | 1004 | Ivan Reyes - Aguadilla | TLGGR | Contractor Payment | 3,798.75 |
| 04/18/02 | 1005 | Empress Brunet - Aguadilla | TLGGR | Contractor Payment | 8,965.49 |
| 04/18/02 | 1006 | Richard Roland - Aguadilla | TLGGR | Contractor Payment | 11,526.63 |
| 04/18/02 | 1007 | Joseph Parmalee - Aguadilla | TLGGR | Contractor Payment | 18,579.97 |
| 05/14/02 | Wire Transfer | Local Towing - Aguadilla | TLGGR | Contractor Payment | 7,878.00 |
| 05/16/02 | 1008 | Godwin Pumps - Aguadilla | TLGGR | Contractor Payment | 31,560.00 |
| 05/22/02 | Wire Transfer | Local Towing - Aguadilla | TLGGR | Contractor Payment | 6,350.00 |
| 06/05/02 | Wire Transfer | Local Towing - Aguadilla | TLGGR | Contractor Payment | 2,186.00 |
| 06/07/02 | Wire Transfer | Local Towing - Aguadilla | TLGGR | Contractor Payment | 1,525.48 |
| 08/01/02 | 1009 | Cashman Equipment | TLGGR | Contractor Payment | 75,000.00 |
| 09/23/02 | 20541 | Geo Clm | Safeco | Contractor Payment | 1,860.00 |
| 11/11/02 | 21393 | MOBRO Marine, Inc | Safeco | Contractor Payment | 320,000.00 |
| 11/11/02 | 21392 | Flexifloat | Safeco | Contractor Payment | 8,631.00 |
| 11/20/02 | 21435 | Bioimpact, Inc. | Safeco | Contractor Payment | 49,700.00 |
| 11/20/02 | 21434 | Rimco, Inc. | Safeco | Contractor Payment | 9,238.45 |
| 02/21/03 | 23058 | MOBRO Marine, Inc | Safeco | Contractor Payment | 33,748.75 |
| 04/19/03 | 23282 | MOBRO Marine, Inc | Safeco | Contractor Payment | 20,000.00 |
| 05/27/03 | 25023 | Crowley Liner Services, Inc. | Safeco | Contractor Payment | 46,170.77 |

**Total Claims Paid**                                                   1,210,491.30

**2) Credits**

Escrow Account Deposits (from Owners)
Aguadilla Project Payments Received          236,353.16
St. Thomas Project Payments Received          170,560.41
Total Deposits                                                        406,913.57

USVI Rock Change Order Payments
USVI Check # 9087734          189,553.27
USVI Check # 5396204          14,044.71
Total Change Order Payments                           203,597.98

**Total Credits**                                                        610,511.55

**CURRENT LOSS (Exclusive of Attorneys Fees & Expenses)**          599,979.75

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was sent via regular mail on this date to the following:

Duncan B. Hume, Esq.
Attorneysfor Defendants and Third-Party Plaintiffs
Hume & Associates
One Landmark Square
Stamford, CT 06901

James L. Brawley, Esq.
Tracey M. Lane Russo, Esq.
Attorneys for Associated Insurance Agency, Inc.
Morrison, Mahoney & Miller, LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06106

James J. Farell, Esq.
Attorneys for the Defendants and Third-Party Plaintiffs
8 Elm Street
Norwalk, CT 06850

Dianna D. McCarthy, Esq.
Attorneys for Third-Party Defendant Melwain Enterprises, Inc.
Winget Spadofora & Schwartzberg, LLP
183 N. Broad Street
Milford, CT 06460

Luigi Spadofora, Esq.
Winget Spadofora & Schwartzberg
45 Broadway, 19th Floor
New York, NY 10006


Dated:        Jericho, New York
              March 26, 2004


                                        Benjamin D. Lentz