**EXHIBIT E**

00038
1
2  other basis for the belief that Fred Smith was an
3  agent or employee of Safeco?
4    A   Correct.
5    Q   I know you have said that you don't read
6  the fine print on this Exhibit 2, the indemnity
7  agreement. I would like to direct your attention
8  to the general provisions, Paragraph 10, and ask
9  if you could read it to yourself.
10      (Witness perusing document)
11   Q   Would you agree that that says, in
12 essence, that you cannot orally terminate your
13 obligations under the indemnity, they can be
14 modified?
15   A   Yes.
16   Q   Your basis for claiming you are not on
17 the GIA after January or February of 2000 was an
18 oral conversation with Fred Smith?
19   A   Yes.
20   Q   Did you ever try to confirm in some way
21 that Smith had the authority to act on behalf of
22 the surety in such an oral conversation?
23   A   I didn't think I had to.
24   Q   Did you ever deal with anybody other
25 than Smith from Associated with respect to this

```
00066
 1
 2  bonded under the GAI, whether you knew it or not.
 3     A   Without my guarantee.
 4     Q   That is what the court is going to
 5  decide, Mr. Gardella.
 6     A   Yes.
 7     Q   But other than bonds issued on
 8  Defendants' Exhibit 2, what other jobs or bonds
 9  did Local Towing secure without your involvement?
10     A   I don't know.
11     Q   Following the D.C. job, did you agree to
12  serve as a guarantor for Local Towing on any other
13  projects regardless of where they were located?
14     A   No.
15     Q   Did you ever sign an application, did
16  you ever participate in any of the bidding
17  processes for any other jobs?
18     A   No.
19         MS. RUSSO:  I don't have anything
20     further.
21  EXAMINATION (CONTINUED)
22  BY MR. KELLY:
23     Q   I only one have one copy of this.  I
24  want to show you an affidavit, your Affidavit in
25  Opposition to Summary Judgment Motion that our
```

```
00067
 1
 2  firm had made on behalf of the surety in this
 3  case, and in particular, Paragraph 9.  If you
 4  could read that to yourself.
 5      (Witness perusing document)
 6   A  Yes.
 7   Q  I want to confirm that the individual
 8  you are referring to in Paragraph 9 of this
 9  affidavit is, in fact, Fred Smith, and he was the
10  person you dealt with?
11   A  Yes.
12   Q  Did anyone from Safeco indicate that you
13  were discharged, as you requested in Paragraph 9
14  of this affidavit?  Did somebody ever say to you,
15  either verbal statement or in writing, that you
16  were, in fact, discharged from the GIA?
17   A  I never agreed to be on any future bond.
18   Q  If you didn't believe that you were
19  obligated on the bond any further than the
20  Washington job, why would you ask to be removed
21  from it?
22   A  I didn't.  I just said to Mr. Smith that
23  I did not want to be involved in any future jobs
24  outside of the country.
25   Q  That was with respect to this Exhibit 2,
```

00068

1

2  that General Agreement of Indemnity, or on any

3  others that he might want you to be interested in?

4     A   It was in reference to Local Towing

5  going out of the country.

6         MR. KELLY:  I have nothing further.

7         MR. FREETH:  Brief follow-up.

8  EXAMINATION (CONTINUED)

9  BY MR. FREETH:

10    Q   Until you turned over control of the

11 company to your son, can you tell me how many

12 government projects Local Towing did since its

13 inception?

14    A   I would say about ten.  Approximately,

15 ten.

16    Q   Can you remember when the first one was?

17    A   I started in the '70's.  Maybe in '78,

18 '79.  I dredged the harbor for the Town of

19 Greenwich, different small towns, and like that.

20    Q   Do you recall if a bond was required for

21 that project?

22    A   Yes.

23    Q   Do you recall who signed the obligation?

24    A   At that time it was easy to get a bond.

25 I called some agent in Washington, D.C. and he got