UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA, | : : : : | DOCKET NO. 3:02 CV 1966 (AVC) |
| Plaintiffs, | : : | |
| V. | : : | |
| LOCAL TOWING INC., GEORGE GARDELLA, JESSICA HELQUIST-GARDELLA and JAMES GARDELLA, | : : : : : | |
| Defendants/Third-Party Plaintiffs | : : | AUGUST 5, 2005 |
| V. | : : | |
| ASSOCIATED INSURANCE AGENCY, INC., FREDERICK. J. SMITH, AFNY, INC., ASSOCIATED FACILITIES OF AMERICA LTD., MELWAIN ENTERPRISES, INC., CHARLES ASSOCIATES, P.C., AND CHARLES SAPOCHETTI, | : : : : : : : | |
| Third-Party Defendants. | : : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTION OF DEFENDANT JAMES GARDELLA
FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT AGAINST DEFENDANT JAMES GARDELLA**

Plaintiffs Safeco Insurance Company of America ("Safeco") and General

Insurance Company of America ("General"), by their attorneys, Torre Lentz Gamell Gary

& Rittmaster, LLP, respectfully submit this memorandum (1) in opposition to Defendant

James Gardella's ("Gardella") motion for summary judgment, and (2) in support of plaintiffs' cross-motion pursuant to Fed. Rule Civ. P. 56 for summary judgment against said defendant pursuant to his indemnity agreement obligations (i) for $599,979.75, representing the undisputed, un-reimbursed payments made by plaintiffs to subcontractors and suppliers under the surety bonds at issue furnished by plaintiffs on behalf of defendant Local Towing Inc. ("Local Towing"), and (ii) finding liability for the attorneys' fees and expenses incurred by plaintiffs as a result of issuing those bonds, with the amount to be determined on inquest.

The background facts as to the bonds and plaintiffs' payments, receipts and losses are fully set forth in the affidavit of Ira Sussman, a Claims Administrator of the Surety, sworn to March 18, 2004, which was submitted on plaintiffs' prior motion for summary judgment, a copy of which is annexed as Exhibit "A" to the affidavit of Sean Kelley, sworn to August 5, 2005 (hereinafter "the Kelley affid.").

Preliminary Statement

(i) Court's Prior Summary Judgment Decision

As more fully discussed below, by this Court's prior decision dated June 22, 2004, this Court granted plaintiffs' motion for summary judgment against the bonded construction company Local Towing, but denied plaintiffs' motion as against the indemnitor Gardella on the ground that Gardella had "raised an issue of fact that Safeco discharged [Gardella's] duty to indemnify the plaintiffs under the Indemnity Agreement."

(Decision, pp 1, 2; a copy of the decision is annexed as Exhibit "B" to the Kelley affid.)

(ii) <u>Subsequent Discovery</u>

Subsequent discovery has established that the purported "agent" of Safeco, with whom Gardella allegedly had a conversation to the effect that it was no longer necessary for him to indemnify the plaintiffs, was not an agent of Safeco. Gardella has now admitted this.

(iii) <u>Gardella's Changed Approach</u>

Apparently realizing that said discovery has established that Gardella was never relieved of his obligations under the indemnity agreement, Gardella now proactively attempts to avoid his obligations by moving to dismiss this action him upon the "legal" ground that this matter involves what Gardella terms "an offer to indemnify," allegedly requiring specific notice to him of the issuance of any particular surety bond. Gardella contends that his indemnity obligation only applied to the first surety bond on the Washington, D.C. project, that he was not notified by plaintiffs that subsequent bonds were being issued on behalf of Local Towing, and thus has no obligation to indemnify plaintiffs for losses sustained on subsequent bonds.

(iv) <u>The Unambiguous Indemnity Agreement</u>

The written contractual agreement at issue is not an "offer to indemnify." Rather, it is a plain and unambiguous indemnity agreement, clearly setting forth Gardella's responsibility to indemnify plaintiffs with respect to all surety bonds written on behalf of

Local Towing -- until such time as Gardella might terminate his obligations thereunder, in writing, as provided therein. The indemnity agreement plainly states, at its outset, that it is being given "for the purpose of indemnifying [plaintiffs] from all loss and expense in connection with any bonds for which [plaintiffs] <u>now is or hereafter becomes Surety</u> [for Local Towing]." (Exh. "A" to Gardella's moving affidavit sworn to July 14, 2005; emphasis added)

Further, the indemnity agreement clearly provides that it is a "continuing obligation" until terminated in writing as provided therein. The "Termination" paragraph provides as follows:

> Termination: This agreement <u>is a continuing obligation of the Undersigned unless terminated as provided in this paragraph</u>. An undersigned desiring to terminate liability as to future Bonds of Contractor must:
> 1. Give written notice to Surety at Seattle, Washington 98185, by certified or registered mail, of such termination;
> 2. State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.
> 3. It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this Agreement.
>
> \* \* \*
>
> (emphasis added)

In short, this matter involves Gardella's admitted failure to reimburse plaintiffs under the admitted indemnity agreement for an admitted loss. It is upon this basis which

plaintiffs now cross-move for summary judgment.[1]

## ARGUMENT

### POINT I

**THERE IS NO LONGER ANY ISSUE OF FACT THAT PLAINTIFFS MAY HAVE AGREED TO RELEASE GARDELLA FROM HIS INDEMNITY OBLIGATIONS**

The Decision Of June 22, 2004 Was Based
Upon A Purported Discussion Between
Gardella And A Purported Agent Of Safeco

In denying plaintiffs' prior motion for summary judgment against Gardella on the ground that there was a material issue of fact, the Court relied upon the statement by Gardella in his opposing papers (cited by the Court at p.8 of its decision), that prior to the issuance of the surety bonds for the two projects at issue:

> Gardella informed Safeco that he no longer wanted to remain as an individual indemnitor under the GAI. Gardella further states that an agent of Safeco informed him that "it was no longer necessary that [Gardella] ... indemnify" the plaintiffs, because "[Local Towing] was better off financially after the Washington job." Gardella therefore has adduced sufficient evidence to raise an issue of fact regarding whether the plaintiffs discharged him from his personal liability under the GAI.

In the same vein, the Court held that, while there was a specific procedure for terminating one's liability under the indemnity agreement clearly spelled out therein,

---

[1] Subsequent to this Court's June 22, 2004 decision, plaintiffs served Gardella with a Notice To Admit dated July 19, 2004, to which he has never responded, thereby admitting that he executed the General Agreement of Indemnity ("GAI"); that he executed the letter agreement on or about February 15, 2002 reaffirming his obligations thereunder; that the $599,979.75 in losses claimed by plaintiffs are undisputed; and that he never terminated his obligations

namely, a written statement to that effect sent to plaintiffs which Gardella admittedly did not follow, that fact "does not, standing alone, require the conclusion that there is no question of fact regarding whether Safeco abandoned the contract [GAI] with respect to Gardella." (Id.)

Discovery Has Established That Gardella Never
Had Any Such Discussion With An Agent Of Plaintiffs

In his opposition papers on plaintiffs' prior motion for summary judgment, Gardella never identified the purported "Safeco agent" with whom he spoke. However, in his post-motion deposition, Gardella testified that the person to whom he was referring was third-party defendant Frederick J. Smith ("Smith"), a principal of third-party defendant Associated Insurance Agency, Inc. ("Associated"). (Kelley affid., Exh. "E")

Further, by Notice To Admit dated November 23, 2004, to which a response has never been served, Gardella admitted that Smith was the only individual with whom he dealt with respect to terminating his obligations under the GAI; that Smith represented himself to Gardella as an agent of Associated, and never represented to Gardella that either he, Smith, or Associated, had any authority to act on behalf of the plaintiffs; that Gardella never confirmed with the plaintiffs that Smith or Associated had any authority to act as agent on their behalf; and, finally, "That Gardella had no contact (verbal, written or otherwise) with any employee or agent of the [plaintiffs] with respect to the GAI." (Ibid,

---

under the GAI in writing in accordance with its provisions. (Kelley affid., Exh. "C")
94019 v1

Exh. "D"; emphasis added)[2]

Thus, discovery has now established that there is no issue of fact "regarding whether Safeco abandoned the contract [GAI] with respect to Gardella."

Accordingly, since this matter plainly involves a written, unambiguous indemnity agreement and Gardella's admitted failure to reimburse plaintiffs for their admitted losses thereunder, plaintiffs' cross-motion for summary judgment should be granted in all respects.

POINT II

CONNECTICUT LAW CONFIRMS THE VALIDITY AND
ENFORCEABILITY OF INDEMNITY AGREEMENTS

Connecticut courts have confirmed the validity and enforceability of indemnity agreements such as the one at bar. In <u>Leonard Concrete Pipe Company v. C.W. Blakeslee & Sons, Inc.</u>, 178 Conn. 594, 424 A.2d 277 (1979), the Supreme Court of Connecticut implicitly held that indemnity agreements are valid and enforceable. In <u>Leonard</u>, the Court held that an indemnity agreement will be construed to cover those losses which appear to have been intended by the parties, and stated:

> The question is not what intention existed in the minds of the parties but what intention is expressed in the language used. [citation omitted] The words used by the parties must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract. [citation omitted] Where the language of the contract is clear and unambiguous, the contract is to be given effect according to

---

[2] Submitted with this cross-motion is an affidavit of Scott Brackenbury, plaintiffs' underwriter for the bonds at issue, sworn to August 3, 2005, confirming that neither Smith nor Associated had any agency relationship with plaintiffs.

94019 v1

7

its terms. [citation omitted]

The Superior Court of Connecticut citing <u>Leonard</u> in <u>Actstar Insurance Company v. Door Wizard, LLC</u>, 2002 WL 31375029 (Conn.Super), held that an indemnity agreement similar to the one in this case was valid and enforceable, and granted the surety's application for prejudgment remedy on the basis of the defendant's breach of the indemnity agreement. The Court, in enforcing the provisions of the indemnity agreement in <u>Actstar</u>, held:

> An indemnity agreement will be construed to cover such losses which appear to have been intended by the parties. [citation omitted] <u>The question is not what intention existed in the minds of the parties, but what intention is expressed in the language used.</u> [citation omitted] (emphasis added)

In the instant case, the GAI clearly provides that it applies to future bonds, specifically confirming that it is being given "for the purpose of indemnifying [plaintiffs] from all loss and expense in connection with any bonds for which [plaintiffs] <u>now is or hereafter becomes Surety</u> [for Local Towing]." (emphasis added)

Likewise, in <u>Balboa Ins. Co. v. Zaleski</u>, 12 Conn.App. 529, 532 A.2d 973, <u>cert denied</u>, 206 Conn. 802, 532 A.2d 1315 (1987), the Appellate Court of Connecticut, in hearing an appeal regarding a statute of limitations issue, implicitly held that an indemnity agreement similar to that in the present case was valid and enforceable (the Court went on to find that that particular action was barred by the statute of limitations).

Federal Courts in this Circuit in dealing with collateral security provisions contained in indemnity agreements such as the one herein have confirmed the

enforceability of such indemnity agreements. United States Fidelity & Guaranty Co. v. J. United Electrical Contracting Corp., et al., CV 99-0551, 1999 U.S. Dist. LEXIS 12504 (E.D.N.Y. 1999) (where the District Court ordered specific performance of a collateral security provision in an indemnity agreement similar to the one in the present case); American Motorists Ins. Co. v. United Furnace Co., 876 F.2d 293, 302 (2d Cir. 1989) (the Court of Appeals in enforcing the collateral security provisions of an indemnity agreement similar to the one in the instant matter implicitly found such indemnity agreements valid and enforceable); American Motorists Ins. Co. v. Pennsylvania Beads Corp., 983 F. Supp. 437, 440 (S.D.N.Y. 1997).

Several recent cases in New York dealing with similar indemnity agreements have found them valid and enforceable. Int'l Fidelity Ins. Co. v. Spadafina, 192 A.D.2d 637, 596 N.Y.S.2d 453 (2d Dep't 1993) (holding that "Courts have upheld the validity of such contractual arrangements and have ruled that payments made by sureties under such provisions are scrutinized only for good faith and reasonableness as to amount paid"; 192 A.D.2d at 639); Lori-Kay Golf, Inc. v. Lassner, 61 N.Y.2d 722, 460 N.E.2d 1097, 472 N.Y.S.2d 612 (Ct. App. 1984) (holding that an indemnity agreement was valid and enforceable); Bib Constr. Co., Inc. v. Fireman's Ins. Co. of Newark, New Jersey, 214 A.D.2d 521, 625 N.Y.S.2d 550 (1st Dep't 1995) (holding that, "in the absence of any indication of fraud or collusion" plaintiff was required to indemnify the surety pursuant to the terms of an indemnity agreement); and General Accident Ins. Co. of America v.

Merritt-Meridian Constr. Corp., 975 F. Supp 511 (S.D.N.Y. 1997) (holding that indemnity agreements are "valid and enforceable under New York law" and are limited only by the sureties' obligation to settle claims in good faith).

### POINT III

### THE CASES CITED BY GARDELLA ARE READILY DISTINGUISHABLE OR DO NOT SET FORTH THE CURRENT STATE OF THE LAW IN CONNECTICUT

Gardella relies on an 1820 case, Rapelye v. Bailey, 3 Conn. 438 (1820), for the proposition that where there is an uncertain amount of debt to be incurred in the future which one party expects to be assumed by a third party, then notice of the amount of the debt incurred is required to be given to the third party guarantor, so that he will know the extent of his liability. The Court in the Rapelye case, in granting the defendant's motion for a new trial due to an improper jury instruction, found that an "offer" of a contract to guaranty the debts of another required notice of the acceptance of the "offer", as well as the communication to the individual making the "offer" of the extent of the debt to be guaranteed.

This is plainly not the instant situation. Gardella made no "offer" to guaranty future debts - - he agreed in writing to guaranty them. There was nothing "conditional" or "open" in his execution of the GAI.

In fact, in contrast to the proposition for which Gardella cites Rapelye, at the new trial granted in Rapelye (Rapelye v. Bailey, 5 Conn. 149, 1823 WL 38 [Conn. 1823]), the defendant contended, among other things, that a strict construction of his offer or promise

to guaranty the debt would indicate that he would be liable, if at all, "only for the goods first received" and not for the successive installments of goods received. The Court, in rejecting the defendant's argument, held that the guaranty was a continuing guaranty and queried: "[I]f a limitation was intended as to the time, or manner of delivery, why was it not specified, as was the limitation to the amount?" The Court further stated "if a party means to be a surety only for a single dealing, he should take care to say so."

Similarly, in the present matter, if Gardella had intended to limit his liability only to the Washington D.C. project, this should have been specified in the GAI or he should have terminated his obligations pursuant to its terms.

Suffield Development Associates Limited Partnership v. Society of Savings, 243 Conn. 832, 708 A.2d 1361 (Conn. 1998), cited by Gardella, involved a lawsuit to enforce a purported promise to make a loan in the future where there was no written contract. On appeal, it was held that a cost estimate on a commercial real estate development project was not a definite and certain loan amount, and thus the plaintiffs had no cause of action against the lending institution for failing to finance the project, because the purported "loan commitment" was not definite as to the amount and thus no specific loan agreement existed. Clearly, an action to sue a bank for failure to make a loan is not relevant to the instant action for indemnity. This is confirmed by Wood v. Sempra Energy Trading Corporation, 2005 WL 465423 (U.S. Dist. Ct., D.Conn. 2005), where the Court, in distinguishing the facts of Wood from those in Suffield, noted as follows:

> [T]here was no written contract between the parties, and the court found that the plaintiff could not prove that a contract existed.

The fact is that Gardella executed a written contract agreeing to indemnify the plaintiffs "from all loss and expense in connection with any Bonds for which any SAFECO Insurance Company now is or <u>hereafter becomes Surety</u>" on behalf of Local Towing. (emphasis added) Further, there is no question that such an indemnity agreement is valid and enforceable under Connecticut law according to its terms, and Gardella cannot now attempt to import or imply a "notice" requirement when none is contained therein.

The facts in <u>Bridgeport Pipe Engineering Company v. DeMatteo Construction Company</u>, 159 Conn. 242, 268 A.2d 391 (1970), also cited by Gardella, similarly do not lend themselves to any application in this case. In <u>Bridgeport</u>, the Court upheld a decision in favor of a subcontractor for monies allegedly due to it from the prime contractor under an oral agreement based upon what the Court found to be an unequivocal, explicit, full and unconditional acceptance of an offer. Gardella cites <u>Bridgeport</u> for the proposition that there must be an unequivocal offer and acceptance for there to be an enforceable oral contract. While this may have been part of the <u>Bridgeport</u> holding, it is not relevant in the instant situation where Gardella executed a written contract agreeing to indemnify the plaintiffs on all future bonds they might issue on behalf of Local Towing, on which he remains liable until such time as those obligations

are terminated pursuant to the provisions thereof.

In <u>Woodbridge Ice. Co. v. Semon Ice Cream Corporation</u>, 81 Conn. 479, 71 A. 577 (1909), an ice dealer brought suit to collect a balance due under an oral agreement to provide ice to be used by an ice cream company. The ice dealer notified the ice cream company in writing by letter on various occasions that it was increasing the price per ton of the ice. Gardella cites this case for the proposition that in the event one party to a contract offers terms to change the legal relations between the parties, those terms must be accepted in order for there to be a contract. This is clearly not the case here. No changes were made to the GAI. In fact, it is Gardella who is attempting to import changes to its terms.

Lastly, Gardella cites <u>New Haven County Bank v. Mitchell</u>, 15 Conn. 206 (1842), <u>Hartford-Aetna National Bank v. Anderson</u>, 92, Conn. 643, 103 A. 845 (1918), and <u>Bushnell v. Church</u>, 15 Conn. 406, 1843 WL 383 (Conn. 1843), for the proposition that where there is an uncertain amount of debt to be incurred in the future which one party expects to be assumed by a third party, then notice of the amount of the debt actually incurred is required to be given to the third-party guarantor, so that he will know the extent of his liability. As indicated above these cases are inapposite to the clear terms of the indemnity agreement at issue.

Moreover, it is interesting to note that the Court in <u>Hartford-Aetna</u> stated the following:

> [T]he defendant had it in his power to terminate his liability, except as to notes then outstanding, whenever it appeared prudent to do so. He did not keep himself informed as to the amount of the Pierson Company's indebtedness to the bank, but according to his own answer allowed 3 1/2 years to elapse without finding out whether the guaranty had been acted on at all. His loss is attributable as much to his neglect of his own interests, as to any alleged negligence on the part of the bank.

Likewise, Gardella had it in his power to terminate liability for future bonds, but he admittedly did not do so.

### POINT IV

### *STRICTISSIMI JURIS* DOES NOT APPLY

In Point Two of his Memorandum, Gardella contends that he is an "uncompensated surety", and as such, the rule of strictissimi juris should apply to relieve him of his obligations under the GAI for bonds issued on behalf of Local Towing subsequent to those issued for the Washington D.C. project. In support of this contention, Gardella cites Becker v. Faber, 280 NY 146, 10 NE2d 997 (1939); reh.den. 280 NY 730, 21 NE2d 216; Prairie State National Bank v. United States, 164 U.S. 227, 41 L.Ed. 412, 17 S.Ct. 142 (1896), and Monmouth Lumber Co. v. Indemnity Insurance Company, 21 N.J. 439, 122 A2d 604 (1956).

Each of these cases involves the purported alteration of the contractual obligations of a guarantor/surety and the application of the rule of strictissimi juris, requiring the Court to find that a surety's obligations cannot be altered without the consent of the surety, and that such an alteration discharges the surety. However, in the instant case,

plaintiffs are not the parties attempting to change the terms of the indemnity agreement, which is a continuing obligation plainly applying to any future bonds and which contains the mechanism for terminating one's liability thereunder; it is Gardella who is attempting to alter the terms of the written indemnity agreement to add a requirement that he be given notice whenever a bond is issued. Thus, the rule of <u>strictissimi juris</u>, if it has any application at all, requires that the GAI be strictly enforced according to its terms, entitling plaintiffs to summary judgment.

## POINT V

### THE SURETY IS ENTITLED TO ATTORNEYS' FEES AND EXPENSES, WITH THE AMOUNT TO BE DETERMINED AT INQUEST

The GAI provides for recovery of attorneys' fees and expenses incurred as a result of issuing the bonds in question, as well as attorneys' fees incurred as a result of the indemnitors' default or breach of the GAI. Case law confirms that the surety is entitled to recover its attorneys' fees, including the attorneys' fees incurred in bringing the instant action. <u>Republic Ins. Co. v. Pat DiNardo Auto Sales, Inc., 44 Conn.Supp. 207, 678 A..2d 516 (1995); Burr v. Lichtenheim, 190 Conn. 351, 460 A.2d 1290 (1983)</u>. Accordingly, plaintiffs are entitled to recover the amount thereof to be determined at inquest.

## CONCLUSION

For the reasons set forth above, and based upon Gardella's admissions, it is respectfully requested that the Court grant plaintiffs cross-motion for summary judgment against James Gardella for (1) plaintiffs' unreimbursed payments of $599,979.75, plus interest from the date of each disbursement; (2) plaintiffs' reasonable attorney's fees and expenses in an amount to be determined by the Court; and (3) such other and further relief as this Court deems just and proper.

Dated: Jericho, New York
       August 5 2004

                    Respectfully submitted,

                    TORRE LENTZ GAMELL GARY
                    & RITTMASTER, LLP

                    By: _____
                          Benjamin D. Lentz   (BL 4860)

                    A Member of the Firm
                    Counsel for Plaintiffs
                    Safeco Insurance Company of America
                    General Insurance Company of America
                    100 Jericho Quadrangle, Suite 309
                    Jericho, New York 11753-2702
                    (516) 240-8900