established, summary judgment in favor of Melwain with respect to the negligence count must enter.

      2.      The Third Party Plaintiffs claim is barred by the statute of limitations

"Summary judgment may be granted where a claim is barred by the statute of limitations" as long as the "material facts concerning the statute of limitations are not in dispute." Doty v. Mucci, 238 Conn. 800, 806, 679 A.2d 945 (1995); Burns v. Hartford Hospital, 192 Conn. 451, 452, 472 A.2d 1257 (1984). Further, claims of negligence are governed by the general tort statute, Conn. Gen. Stat. § 52-577. This statute provides, *inter alia*, that no tort action "shall be brought but within three years from the act or omission complained of." Conn. Gen. Stat. § 52-577 is an "occurrence statute" which means "that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." Collum v. Chapin, 40 Conn. App. 449, 451, 671 A.2d 1329 (1996). Thus, the controlling date for accrual purposes with respect to James Gardella's negligence claim is the date of the act or omission complained of as opposed to the date of any consequences caused by the act or omission. Shuster v. Buckley, 5 Conn. App. 473, 477-79, 500 A.2d 240 (1985).

It is undisputed that James Gardella testified that in "February or March" 2000, he had a conversation with Fred Smith during which he advised Smith that he did not want to be involved with the indemnification of any LTI jobs that occurred outside the continental United States. (See December 7, 2004 Transcript of James Gardella's Deposition at 44-45.) The basis of Gardella's negligence claim against Melwain is that, following this request, Melwain failed to remove him from the GAI. Therefore, the statute of limitations for any damages arising out of or related to this particular act of

negligence would commence sometime in March 2000 at the very latest. Because the accrual of the cause of action commenced in March 2000, given the three-year statute of limitations, any claims arising out of or related to the alleged negligence should have been commenced before March 2003. In this case, the Third Party Complaint was not commenced until May 14, 2003, which was approximately two months after the statute of limitations had run. Because James Gardella's claim of negligence was commenced *after* the statute of limitations ran, Summary Judgment in favor of Melwain should be entered.

### D. The Third Party Plaintiffs have failed to establish entitlement to recovery under count Sixteen of the Third Party Complaint

The Third Party Plaintiffs have alleged a theory of "agency liability" against the Third Party Defendants in Count Sixteen of the Third Party Complaint. Because there is no evidence of the existence of an agency relationship between Melwain and any other third party defendant or the Third Party Plaintiffs, and because the record clearly shows that Melwain conducted its transactions with the other Third Party Plaintiffs and Third Party Defendants in this matter at "arms length", the claim brought under Count Sixteen of the Third Party Complaint fails as a matter of law.

Clearly, an agency relationship must be shown in order to maintain a claim for agency liability. An agency relationship is defined as a fiduciary relationship in which one person has manifested consent to another that he will act on his behalf, subject to his control, and with consent from the other to so act. Gordon v. Tobias, 262 Conn. 844, 817 A.2d 342 (1995). The principal in an agency relationship is bound by and liable for the acts in which his agent engages with the authority of the principal and within the scope of the agency relationship. Id. Thus, three elements are required to show the existence of an agency relationship: (1) a manifestation by the principal that the agent will act for him;

19

(2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. Important factors to consider in assessing whether an agency relationship exists include: whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the instrumentalities, tools, and the place of work; and the method of paying the agent. Beckenstein v. Potter & Carrier, Inc., 191 Conn. 120, 133, 464 A.2d 6 (1983).

Local Towing has alleged, as part of its theory of liability under Count Sixteen that Melwain, AFNY and AFA are joint venturers with Associated and Smith. However, the Third PartyComplaint does not allege facts to support such a relationship. The Third PartyComplaint only alleges that AFNY, AFA and Melwain "acted as...the joint-venturer[s] with Associated and Smith." The Third Party Plaintiff has failed to bring forth any facts that would establish that these entities combined their property, money, efforts, skill or knowledge for the common undertaking of procuring bonds or insurance.

A joint venture relationship is a relationship between two parties in which they "combine their property, money, efforts, skill or knowledge in some common undertaking." Lesser v. Smith, 115 Conn. 86, 89, 160 A.2d 302 (1932). Such relationships are usually considered informal partnerships and are generally governed by the principles of common law partnership. Id. However, the parties must intend to contract for a single transaction, which is the essence of a joint venture. Builders Hardware v. DiPietro, 2001 Conn. Super. LEXIS 2760 (J.D. at Hartford).

In Macomber v. Travelers Property and Casualty Corp., 261 Conn. 620, 804 A.2d 180 (2002), the Connecticut Superior Court held that "although agency is normally a

question of fact, its existence or nonexistence may be determined as a matter of law." In

determining that an agency relationship did not exist;

> ....Although it may be argued that...the defendants were acting on their
> behalf, one cannot overlook the salient fact that the defendants were also
> acting primarily for their own benefit and that of their insureds. *The
> plaintiffs' complaint, moreover, fails to allege that the defendants
> affirmatively consented* to act in their best interests in purchasing the
> annuities. It therefore follows that the defendants *did not owe the
> plaintiffs the single duty of loyalty characteristic of the relationship that
> exists between a principal and his agent.* Furthermore, *noticeably absent
> from the facts alleged in the complaint is any indicia that the defendants
> acted subject to the plaintiffs' control*....Indeed, had the plaintiffs been
> invested with the type of control inherent in the traditional principal-agent
> relationship, they would have been able to monitor the defendants'
> conduct and, perhaps, would have been better equipped to safeguard their
> interests against the rebating and short-changing schemes alleged in the
> present complaint. *Because these elements, critical to the existence of an
> agency relationship, are lacking on the face of the plaintiffs' complaint,*
> we conclude that no such relationship existed that could have given rise to
> a fiduciary duty.

Id. at 641, n. 12 (emphasis added).

The Court's analysis in Macomber is dispositive as it pertains to the alleged

agency relationships alleged in the Third Party Complaint. In Count One, paragraphs 7, 8

and 9, Local Towing states that AFNY, AFA and Melwain "acted as the agent[s] for

Safeco in the issuance of Bonds and activities related thereto." These paragraphs are the

only paragraphs in the Third Party Complaint that allege that AFNY, AFA and Melwain

have an agency relationship with Safeco. Local Towing has not alleged that (1) Safeco

manifested that Melwain would act for it regarding the issuance of Bonds; (2) that

Melwain accepted such undertaking; or (3) that there was an understanding between

Safeco and Melwain that Safeco would be in control of the undertaking. Similar to the

plaintiffs in Macomber, the allegations in Local Towing's Third Party Complaint

21

regarding the relationship between Safeco and Melwain do not affirmatively set forth the existence of an agency relationship.

Similarly, in Count One, paragraphs 4, 5 and 6, Local Towing alleges that AFNY, AFA and Melwain "acted as...agent[s] for Local and Gardella in the procurement of the Bonds and the activities related thereto." The facts as alleged in Counts 7, 8, 9, 16 and 17 fail to sufficiently allege an agency relationship.

In the Seventh Count, Local Towing alleges, in paragraph 25, that "AFNY, AFA and Melwain agreed as a condition for the issuance of the Bonds that they would arrange for life insurance in the amount of $1,000,000 on the life of Francis Empey and that the Bonds would not be issued until such life insurance was obtained." This allegation does not provide any facts demonstrative of an agency relationship between Local Towing and AFNY, AFA and Melwain. Specifically, there are no facts demonstrating that AFNY, AFA and Melwain were acting at the behest of Local Towing or for the benefit of Local Towing. In addition, there are no facts demonstrating that Local Towing controlled AFNY, AFA and Melwain's conduct in arranging for a life insurance policy on the life of Francis Empey. The Eighth and Ninth Counts are likewise empty of factual allegations demonstrating an agency relationship. There is not even a reference to the elements required to establish an agency relationship. Finally, the Sixteenth and Seventeenth Counts are only legal conclusions stating that agency and fiduciary relationships allegedly existed between AFNY, AFA and Melwain and Local Towing.

In addition, Local Towing and James Gardella have not alleged that AFNY, AFA and Melwain had actual or apparent authority to act on their behalf. The Third Party Complaint completely fails to demonstrate that Local Towing gave AFNY, AFA and

22

Melwain express authority. With regard to implied authority, the allegations appear to demonstrate that Associated and Smith were empowered with the authority to act on behalf of Local Towing. Finally, Local Towing has not alleged that AFNY, AFA and Melwain were acting under apparent authority: (1) Local Towing has not alleged that it conducted itself in such a way as to hold out AFNY, AFA and Melwain as possessing sufficient authority to embrace the acts in question, or knowingly permitted them to act as having such authority; and (2) Local Towing has not alleged that the parties, acting in good faith, dealing with AFNY, AFA and Melwain reasonably believed, under all of the circumstances, that AFNY, AFA and Melwain had the necessary authority to bind Local Towing.

Furthermore, the facts, as alleged, do not provide any evidence Melwain controlled Associated and Smith's conduct. Again, with reference to Count 3, paragraphs 22 through 28, the allegations contained therein indicate that Associated and Smith had control over their own conduct and interactions with Local Towing. (This would also seem to negate the traditional agency-principal relationship between Associated and Smith and Local Towing—similar to the situation in Macomber).

Therefore, it would appear on the face of the Third Party Complaint that the alleged agency relationships between Local Towing and AFNY, AFA and Melwain do not exist. Furthermore, the facts fail to adequately allege that there are agency relationships between AFNY, AFA and Melwain with respect to Safeco and Associated and Smith. Because an agency relationship is a particular kind of fiduciary relationship, the facts as alleged also fail to demonstrate that there were breaches of both agency or fiduciary relationships. By way of example, contrary to the allegations of the Third Party

23

Complaint, it is apparent that James Gardella had no information to suggest the existence

of an agency relationship between Melwain and AIA and Smith beyond his own

completely subjective impression.

> Q   Did Wayne Price ever say that he was an agent of Associated to you?
> A   An agent of Associated, no.
> Q   Did he ever say that he was an agent of Fred Smith?
> A   No.
> Q   Did he ever say to you that he and Fred Smith were joint venturers?
> A   He didn't say that. I assumed they were. That's what he said.
> Q   What's your understanding of a joint venturer?
> A   I think the two of them split the commission that they made on these
> various jobs that Local Towing did.
> Q   And what's your basis for that understanding?
> A   Why else would they be doing it? That's what they're in business for,
> to make money.
> May 5, 2004 Deposition of James R. Gardella at 76-77, annexed hereto as
> Exhibit "G."

As such, AFNY, AFA and Melwain cannot be held liable to Local Towing and Gardella

based on the facts as alleged in the Third Party Complaint.

> **E.    The Third Party Plaintiffs have failed to establish the requisite
> showing of entitlement to recover on their breach of fiduciary
> duty claim against Melwain**

A fiduciary relationship is a relationship characterized by a unique degree of trust

and confidence between parties. Murphy v. Wakelee, 247 Conn. 396, 721 A.2d (1998).

Furthermore, in such a relationship, one party has superior knowledge, skill or expertise

and has a duty to represent the other. Id. The party in the superior position owes a duty

of loyalty, which is breached when that party engages in self-dealing by using the

relationship to benefit its personal interest. Mangiante v. Niemiec, 82 Conn. App. 277,

843 A.2d 656 (2004). The party alleging that there is a breach of a fiduciary relationship

must demonstrate the existence of such a relationship. Hi-Ho Tower, Inc. v. Com-

Tronics, Inc., 255 Conn. 20, 761 A.2d 1268 (2000).  However, once the existence of a

fiduciary relationship is established, the burden shifts to the fiduciary to prove fair

dealing.  Mangiante, 82 Conn. App. 277.  That is, the fiduciary "has the burden of

showing that he has not taken advantage of his influence or knowledge and that the

arrangement is fair and conscientious."  Murphy, 247 Conn. at 406.

However, there are instances in which certain relationships do not give rise to a

fiduciary relationship.  Hi-Ho Tower, Inc., 255 Conn. 20.

> In the seminal cases in which [the Connecticut Supreme Court] has
> recognized the existence of a fiduciary relationship, the fiduciary was
> either in a dominant position, thereby creating a relationship of
> dependency, or was under a specific duty to act for the benefit of
> another....
> In the cases in which this court has, as a matter of law, refused to
> recognize a fiduciary relationship, the parties were either dealing at arm's
> length, thereby lacking a relationship of dominance and dependence, or
> the parties were not engaged in a relationship of special trust and
> confidence.

Id. at 38-39.

For example, the plaintiff and the defendants in Hi-Ho Tower, Inc. were parties to

an arm's length transaction in which the defendants provided certain technical assistance

and limited managerial services to the plaintiff and were allowed the use of the plaintiff's

facility.  "The defendants' management responsibilities at the tower included knowledge

of the [Federal Communications Commission's] regulations, repair and pricing

information, and technical skills related to antenna height and tower load capacity."  Id.

at 40.  The Court held that the plaintiff was required to produce evidence of a unique

degree of trust and confidence between the parties such that the defendants undertook to

act primarily for the benefit of the plaintiff.  Id. at 41 (internal quotations omitted).  The

Court noted that demonstrating that one party relying on and trusting another party, by

25

itself is not enough. In addition, "[s]uperior skill and knowledge alone do not create a business transaction." Id. at 42. Therefore, a fiduciary relationship is established where the plaintiff can demonstrate that it (1) relied on or trusted another party; (2) that the other party had superior skill and knowledge; and (3) that the "superior" party was primarily acting on the plaintiff's behalf.

**F.    The uncontested material facts establish that the allegations of the Third Party Complaint did not depend in any way upon the Plaintiff's claims against the Third Party Plaintiffs, as required by F.R.C.P. 14(a)**

The uncontested material facts establish that Melwain's alleged liability to the Third Party Plaintiffs is in no way contingent upon the Third Party Plaintiffs' liability to Safeco as required by F.R.C.P. 14(a), and as such the Third Party Complaint should be dismissed.

Third party practice is permitted "only where the defendant can show that if he is found liable to the plaintiff then the third party defendant will be liable to him." Unilease Computer Corp. v. Major Computer, Inc., 126 F.R.D. 490, 492 (SDNY 1989). Furthermore, Rule 14 is interpreted as permitting impleader of one whose liability is contingent where the third party will be liable to the defendant only if the defendant is found liable to the plaintiff. Security Capital Mgt. v. DeMonico, 1990 Conn. Super. LEXIS 456, (J.D. at Stamford, 1990); see also States v. Joe Grasso & Sons, Inc., 580 F.2d 749 (5th Cir. 1967). "[F]ederal courts recognize that entirely separate and independent claims cannot be maintained against a third party under Rule 14 even though they arise out of the same set of facts as the main claim." Id. In other words, a defendant cannot assert an entirely separate claim against third party, even though it arises out of same general set of facts as main claim; there must be an attempt to pass on to third party

26

all or part of liability asserted against defendant. <u>Unilease Computer Corp. v Major Computer, Inc.</u>, 126 FRD 490 (SDNY 1989); <u>United States v Scott</u>, 18 FRD 324 (DC NY 1955).

There is, at best, a minimal overlap between the main claim brought by Safeco, and the otherwise unrelated disputes involved in Third Party Complaint. Safeco is seeking to recover on a bond while the Third Party Plaintiffs are suing Melwain for allegedly not procuring keyman life insurance. Thus, the Third Party Complaint is neither derivative of nor dependent on the outcome of the underlying action, and judicial economy will be promoted by dismissal of Third Party Complaint. Because the outcome of the Third Party claim is not contingent on outcome of main claim, the Third Party Complaint should be dismissed. <u>See Siemens Westinghouse Power Corp. v. Dick Corp.</u>, 299 F.Supp.2d 242 (SDNY 2004); <u>National Bank of Canada v Artex Indus.</u>, 627 F Supp 610 (SDNY 1986).

In <u>Siemens Westinghouse Power Corp. v. Dick Corp.</u>, 299 F.Supp.2d 242 (S.D.N.Y. 2004), the court dismissed the defendant's third party complaint because the allegations did not depend upon the plaintiff's claim against the third party plaintiff. Siemens Westinghouse Power Corporation ("SWPC") and Dick Corporation ("Dick") formed a consortium for the purpose of constructing a power plant in Londonderry, New Hampshire. Because of delays, SWPC paid extensive liquidated damages to the owners of the power plant and, as a result, SWPC instituted an action against Dick seeking reimbursement from Dick and its sureties. SWPC then moved for a partial summary judgment, which was granted, in part, by the court. "The Court determined that, under the Consortium Agreement, Dick was responsible for paying liquidated damages to the

27

[owners of the power plant] in the first instance and that the parties were to later determine, by applying certain formulas in the Consortium Agreement, SWPC's share of those damages." Id. at 244.

Dick impled the owners of the power plant and several project subcontractors ("Third Party Defendants") seeking to hold them liable for "among other things...misrepresenting the nature of the project to Dick, and for various shortcomings in executing the project." Id. at 248. The Third Party Defendants brought separate motions to dismiss and shared the common argument that "the third party claims do not meet the standard of FRCP 14(a) and therefore must be dismissed." Id. In granting the Third Party Defendants' motions to dismiss, the Court looked at SWPC's complaint against Dick and the narrow issue presented therein: "whether Dick must reimburse SWPC for the upfront payments of certain liquidated damages, before SWPC and Dick apportion the responsibility between each other." Id. The Court then stated: "Whether any Third Party Defendant committed contract breaches or torts affecting the ultimate apportionment of liquidated damages *is not contingent* in any way upon the narrow question of which Consortium member is liable for the up-front payments under the Consortium Agreement." Id. (emphasis added). The Court concluded:

> Even though the third party claims involve the same power plant project as the principal complaint, the mere fact that the alleged third party claim arises from the same transaction or set of facts as the original claims is not enough....The fact that the allegations in the third party complaint may depend on the adjudication of Dick's own counterclaims against SWPC is also insufficient because *the plain language of Rule 14(a) requires the third party claim to depend upon the plaintiff's claim against the third party plaintiff.*

Id. at 248 – 249 (citations omitted; emphasis added).

28

The instant action is analogous to <u>Siemens Westinghouse</u>. The Plaintiff's underlying Complaint is a breach of contract action seeking reimbursement from the Third Party Plaintiffs for defaulting on the General Agreement of Indemnity ("GAI") and failing to meet its financial obligations. The narrow issue in this action is whether the Third Party Plaintiffs must reimburse the Plaintiff for breaching the GAI. Local Towing has admitted its liability to the Plaintiff. In fact, the Court granted the Plaintiffs' motion for summary judgment in part because

> Local Towing admits that it is liable. Specifically, Local Towing states that "Local Towing agreed that its failure to meet its financial obligations [in connection with the Aguadilla and St. Thomas Projects] constituted a default under the terms of the GAI and promised to repay the funds expended by the plaintiffs to meet those financial obligations." Local Towing further admits that, although the plaintiffs have expended funds and incurred debts in the amount of $599,979.75 on behalf of Local Towing, Local Towing has not reimbursed the plaintiff for these payments as it promised. Order at 6.

Local Towing has alleged that Melwain breached a contract, made negligent misrepresentations, acted negligently, and breached a fiduciary duty. All of these claims are independent of the Plaintiffs' claims against Local Towing. Stated differently, the claims alleged by Local Towing against Melwain are not contingent in any way upon the issue of whether the Third Party Plaintiffs must reimburse the Plaintiff for breaching the GAI. As the court in <u>Siemens Westinghouse</u> concluded: "Even though the third party claims involve the same [projects] as the principal complaint, the mere fact that the alleged third party claim arises from the same transaction or set of facts as the original claims is not enough." <u>Siemens Westinghouse</u>, 299 F.Supp.2d at 248 – 249.

Based upon the foregoing, the Third Party Complaint should be dismissed as the allegations of the Third Party Complaint did not depend in any way upon the Plaintiff's claims against the Third Party Plaintiffs, as required by F.R.C.P. 14(a).

## V.    CONCLUSION

In consideration of the Third Party Plaintiffs failure to establish essential elements of each cause of action they have alleged against Melwain, summary judgment in Melwain's favor should be granted.

Dated:  August 8, 2005
        Stamford, CT

Respectfully submitted,

WINGET, SPADAFORA
& SCHWARTZBERG, LLP
Attorneys for Third Party Defendant
Melwain Enterprise, Inc.

By: _____
Richard N. Freeth (ct26253)
177 Broad Street, Suite 501
Stamford, CT 06901
Phone: (203) 328-1200
Fax:    (203) 328-1212

## CERTIFICATION OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing Motion for Summary Judgment was sent via regular mail on August 8, 2005 to:

Constantine G. Antipas, Esq.
The Antipas Law Firm
Attorneys for Plaintiffs
One Fort Hill Road
Groton. CT 06340

Benjamin D. Lentz
Torre, Lentz, Gamell, Gary & Rittmaster, LLP
Attorneys for Plaintiffs
100 Jericho Quadrangle, Suite 309
Jericho, NY 11753

Duncan B. Hume, Esq.
Attorneys for Defendant and Third-Party Plaintiffs
8 Elm Street
Norwalk, CT 06850

James J. Farrell, Esq.
Attorneys for Defendant and Third Party Plaintiffs
8 Elm Street
Norwalk, Connecticut 06850

James L. Brawley, Esq.
Tracey M. Lane, Esq.
Attorneys for Associated Insurance Agency, Inc.
Morrison, Mahoney & Miller, LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06106

Dated:  August 8, 2005

Richard N. Freeth