| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA,<br>　　　　　　　　　　　　　　　　　Plaintiffs, | DOCKET NO:<br><br>3:02-CV-1966 (AVC) |
| -against- | |
| LOCAL TOWING INC., GEORGE GARDELLA, JESSICA HELQUIST-GARDELLA, and JAMES GARDELLA, | August 2, 2005 |
| 　　　　　　　Defendants/Third-Party Plaintiffs. | |
| -against- | |
| ASSOCIATED INSURANCE AGENCY, INC., FREDERICK J. SMITH, AFNY, INC., ASSOCIATED FACILITIES OF AMERICA LTD., MELWAIN ENTERPRISES, INC., CHARLES ASSOCIATES, P.C, and CHARLES SAPOCHETTI, | |
| 　　　　　　　　　Third-Party Defendants. | |

------------------------------------------------------------------ x

### AFFIDAVIT OF WAYNE PRICE

I, Wayne Price, submit the following affidavit under oath:

1.　　I make this affidavit in support of Melwain Enterprises, Inc.'s Motion for Summary Judgment in the above-captioned matter.

2.　　I am an Account Executive of Melwain Enterprises, Inc. ("Melwain"). I have personal knowledge of the business records of Melwain, and of the facts and circumstances of this matter as discussed herein.

3.　　Melwain was formed as a New York Domestic Business Corporation in 2000.

4.　　Melwain is a professional insurance and bonding company, and is, among other things, in the business of procuring and/or releasing surety bonds.

5. Melwain is the successor to AFNY, Inc. ("AFNY"), the corporate entity for my parents' business, which they had run for over thirty years, until it was dissolved after my father passed away in September 1996.

6. My father had known the Third Party Defendant, Mr. Fred Smith, of Associated Insurance Agency, Inc. ("Associated") for over 30 years, during which time they had occasionally done business together. They were neither partners nor joint venturers.

7. Neither Melwain, nor any of its predecessors or employees, has ever been either a partner or joint venturer with Associated or Mr. Smith in connection with any dealings with Safeco, Local Towing or the Gardellas.

8. On information and belief, James Gardella and George Gardella had either a business or personal relationship with Frederick Smith for many years.

9. Local Towing and the Gardellas were the clients of Associated Insurance Agency and Fred Smith.

10. At all times during the course of their dealings, Local Towing had an arms length business relationship with Melwain.

11. At no time has Melwain, or any of its predecessor entities, had a written or oral contract with Local Towing or the Gardellas.

12. As an agent for Safeco, Melwain's involvement in this matter was that it collected documents from Associated necessary to obtain the surety bonds issued by Safeco.

13. Smith approached Melwain in early 2000 to request Melwain's services for the benefit of his client, Local Towing, as they were required to secure bonding for

two projects which they intended to bid upon. One project was in Aguadilla, Puerto Rico, the other in St. Thomas, Virgin Islands.

14. Melwain was advised by Fred Smith that Local Towing had retained the services of an experienced professional, Mr. Francis Empey, to manage the two projects. My understanding was that Mr. Empey was a joint venturer with Local Towing for the two projects.

15. On information and belief, Local Towing bid on the project in Aguadilla, Puerto Rico in 2000. They submitted their bid, with a bid bond, on May 25, 2000, assuring that in the event that they were the low bidder, a performance bond will be issued. They were the successful bidder, and therefore the performance bond was issued in August 2000.

16. On information and belief, Local Towing bid on the project in St. Thomas in 2000. They submitted their bid, with a bid bond, on April 21, 2000, assuring that in the event that they were the low bidder, a performance bond will be issued. They were the successful bidder, and therefore the bond was issued on July 26, 2000.

17. Safeco agreed to provide bonding for the two projects.

18. I recall that a meeting took place in Puerto Rico in the summer of 2000, after Local Towing was awarded the contracts for the two projects, during which it was suggested that a "keyman" life insurance policy be obtained on Fran Empey. However, this was not made a condition to issuing the bonds. During that period we continued to recommend to Mr. Smith that his client, Local Towing, secure the keyman life insurance on Mr. Empey, which would add cash to Local Towing were Mr. Empey to pass away before the pending projects could be completed. Safeco was concerned that if Empey

died there would not be enough available liquid funds in the business so that it would have the ability to cover contingencies. The advantage to Local Towing in securing the keyman life insurance was to make Safeco more comfortable in _future_ business dealings, because the parties thought that they would have this business relationship for many years.

19. Safeco approved the issuance of the surety bonds, and the paperwork was prepared by Melwain.

20. Melwain served as Safeco's agent in this transaction. Melwain sent all necessary documents to Mr. Joe Mallory at Safeco for approval. Melwain then released the bond with Safeco's approval to Mr. Smith at Associated.

21. On information and belief, Local Towing and Mr. Empey failed to take all the necessary steps to secure the keyman life insurance before he passed away in September 2000.

22. In fact, we have learned after the fact that Mr. Empey undertook the first step (a physical examination for the life insurance company) on or about September 11, 2000, a day or so before he died. Further, this first step was undertaken approximately two months after Local Towing had been awarded the two projects.

23. On information and belief, Mr. Empey passed away before Local Towing had actually begun work on either of the two projects.

24. On information and belief, after the projects were begun, problems arose with the construction fairly quickly. Most of the parties working on the projects fought amongst themselves, and construction fell behind.

25.    The fact that Mr. Smith knew my father had no bearing on Melwain's handling of this deal. It was conducted and executed like any other business transaction with any other customer.

26.    Melwain had no prior dealings with Local Towing before being approached by Mr. Smith regarding securing surety bonds for the two projects referenced above.

_____
Wayne Price

Subscribed and sworn to (affirmed)
before me this day the 3 of August, 2005
at  NASSAU COUNTY, NEW YORK

_____
[signature of Notary]

My commission expires on  9/08/06

JOSEPH ZASO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01ZA6012980
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES 9/08/06