UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------------x

SAFECO INSURANCE COMPANY OF                DOCKET NO.
AMERICA and GENERAL INSURANCE
COMPANY OF AMERICA,                        302CV1966-AJC

            Plaintiffs

    v.

LOCAL TOWING INC., GEORGE GARDELLA,        September 12, 2005
JESSICA HELQUIST-GARDELLA, and
JAMES GARDELLA,

            Defendants.
---------------------------------------------------------------x

LOCAL TOWING INC., GEORGE GARDELLA,
JESSICA HELQUIST-GARDELLA, and
JAMES GARDELLA,

            Third-Party Plaintiffs

    v.

ASSOCIATED INSURANCE AGENCY, INC.,
FREDERICK J. SMITH, AFNY, INC., MELWAIN
ENTERPRISES, INC., WAYNE PRICE, MARYANNE
PRICE, and ERIC EMPEY,

            Third-Party Defendants
---------------------------------------------------------------x

**DEFENDANT JAMES R. GARDELLA'S MEMORANDUM IN REPLY TO THE
MEMORANDUM IN OPPOSITION TO HIS MOTION FOR SUMMARY JUDGMENT AND
IN ANSWER TO THE PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant James R. Gardella submits this memorandum in reply to the opposition to his Motion for Summary Judgment and in answer to the Cross-Motion by the plaintiffs for Summary Judgment. There are a number of issues that are either agreed to or otherwise do not need to be decided, and there is only one issue of law before the court. Defendant James Gardella takes the position that the contract that the plaintiffs are suing on is insufficient as a contract under the law of the State of Connecticut and his motion must therefore be granted. The plaintiffs take the position that the contract is sufficient and that James Gardella never terminated his liability under the contract by not giving notice to the plaintiffs. As was pointed out in the Motion for Summary Judgment, the issue of James Gardella's giving notice has been determined to be an issue of fact in the decision on the previous, failed motion for summary judgment by the plaintiffs.

As concerns these motions, there are certain issues about which there is no issue to be decided. This assumes, as far as James Gardella is concerned, that he is found liable to the sureties, which liability is denied.

The first issue is the amount that the surety claims to be due from Local Towing, Inc. and its indemnitors. That amount is $599,979.75. The second issue is the claim for attorneys' fees. The plaintiffs under the bonds are entitled to their attorneys' fees, which must be determined at a hearing or agreed to following appropriate disclosure. The third issue is the liability of Local Towing, Inc., and George Gardella and Jessica Helquist-Gardella to the plaintiffs. The court has granted a motion for summary judgment against Local Towing, Inc., and George Gardella and Jessica Helquist-Gardella have had their obligations to the plaintiffs discharged in bankruptcy.

2

The only open issue is the liability of James Gardella to the plaintiffs. This is an issue that was tested by a motion for summary judgment by the plaintiffs last year. At that time, the court held that as James Gardella had advised Fred Smith at Associated Insurance Agency, Inc. that he no longer wanted to be an indemnitor on the bonds being issued by the plaintiffs, there was a question of fact that precluded the court from granting summary judgment. Nothing has changed as far as that is concerned in spite of the cross-motion by the plaintiffs.

The plaintiffs are trying to avoid the issue of whether there was an indemnity contract by directing the court to the issue of whether sufficient notice given to the sureties by James Gardella that he was not willing to act as an indemnitor on any bonds following the Pentagon Boat Basin Job. That issue is not before the court unless it is found that there was an indemnity agreement, and that issue has been saved by James Gardella for trial. The plaintiffs are now trying to have a rehearing on their motion for summary judgment that they lost last year. The fact that James Gardella is now moving for summary judgment on a strictly legal basis while he used a factual argument to defeat the previous motion for summary judgment by the plaintiffs is not, by itself, proof of anything.

## POINT ONE

**The General Agreement of Indemnity is not a contract or an offer to indemnify; it is an offer to negotiate only, because it lacks the essential terms of a contract.**

Referring to the General Agreement of Indemnity, the plaintiffs point out quite a number of times that "[t]he written contractual agreement is not an 'offer to indemnify'." They are right. It is not an offer to indemnify in the technical sense, because it does not

3

contain all the elements that are necessary. The sureties by simply notifying James Gardella of their intention to issue more bonds could not create a contract. James Gardella would have to consent to the offer by the plaintiffs to be an indemnitor, but he was never given the offer. The General Agreement of Indemnity is an offer to negotiate and nothing more.

The law in Connecticut, as set forth in the Memorandum in Support of the Motion for Summary Judgment, requires that if there is a so-called agreement to indemnify, the indemnitees, the Plaintiffs, must give notice to the prospective indemnitor of the nature and amount of the debt that the indemnitees want indemnified. The prospective indemnitor, James Gardella, then has the opportunity to accept or reject the offer being made. Unless James Gardella was given the nature and the amount of the debt that he was being asked to indemnify, there could be no acceptance, and there was no contract.

It has been said that the devil is in the details, and in this case, the question is whether the nature and scope of the contractual liability that the plaintiffs were asking James Gardella to assume were details or were essential terms of the contract. If they were essential terms of the contract, then their omission was sufficient to preclude the formation of a contract. This is an issue that was raised before the Supreme Court of Connecticut in the case of *Willow Funding Co., LP v. Grencon Associates*, 63 Conn. App. 832, 843-44, 779 A.2d 174 (2001).

In *Willow Funding*, *supra*, two companies entered into negotiations under which one of the companies, the plaintiff, was to provide financing for the other by paying off a mortgage after it had been reduced in amount by the FDIC. The negotiations dragged on,

and the plaintiff then purchased the note and mortgage and started a foreclosure action on

the debt. The defendant argued that there had been an agreement with the plaintiff

requiring the plaintiff to purchase the debt and that the plaintiff should not be allowed to

foreclose the mortgage for the whole debt.

The plaintiff argued that the essential terms of the agreement had not been fully

spelled out at the time of the agreement. The Appellate Court agreed with the trial court

that:

> …the general terms on which the parties indisputably had agreed by
> October 3, 1994, included all the terms that were essential to an enforceable
> agreement. Under the modern law of contract, if the parties so intend, they
> may reach a binding agreement even if some of the terms of that agreement
> are still indefinite. [Citations omitted]. As Professor E. Allan Farnsworth has
> noted, courts increasingly have been willing to flesh out the intended
> meaning of indefinite contract language by recourse to trade custom,
> standard usage and past dealings. 1 E. Farnsworth, Contracts (2d Ed. 1998)
> § 3.28, p. 398; cf. General Statutes §§ 42a-2-204 and 42a-2-208. Section
> 42a-2-204 expressly recognizes that, if the parties so intend, they may reach
> a binding agreement "[e]ven though one of more terms are left open…" 63
> Conn. App. 832 at 844.

The court continued:

> We do not mean to suggest that contemplated contractual
> undertakings are enforceable no matter how indefinite the agreement may
> be. As the plaintiff points out, numerous Connecticut cases require definite
> agreement on the essential terms of an enforceable agreement, we agree
> with the plaintiff that **an agreement is too indefinite to be enforceable
> until the parties have decided the amount of a contemplated loan**;
> *Suffield Development Associates, Ltd., Partnership v. Society for Savings,*
> 243 Conn. 832, 843, 708 A.2d 1361(1998); or the configuration of a
> subordination agreement. *L & R Realty v. Connecticut National Bank,* 53
> Conn.App. 524, 537-38, 732 A.2d 181 cert. denied, 250 Conn. 901, 734
> A.2d 984 (1999). Similar cases abound.  63 Conn. App. 832 at 844-45.
> [Emphasis added.]

The amount of a contractual obligation, whether it be the amount of a loan or the amount of a surety bond is clearly an essential term of a contract. The court in *Willow Funding, supra* found that there was a contract, as the items that the plaintiff complained were not agreed upon were details and not essential terms of the contract.

The same issue was recently discussed by the Connecticut Supreme Court in the case of *Glazer v. Dress Barn, Inc.,* 274 Conn. 33, 873 A.2d. 929 (June, 2005). In *Glazer,* there was an agreement concerning the purchase of a business by Dress Barn. The financing bank suggested that the deal be structured differently. Dress Barn then decided not to pursue the agreement. The court held:

> We begin with the fundamental principles that guide our inquiry. "Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements. *Presidential Capital Corp. v. Reale,* [supra, 231 Conn. 506 {231 Conn. 500 (1994)}]; 1 Restatement (Second), Contracts § 33, comment (e), p. 94 (1981)…[W]here the memorandum appears [to be] no more than a statement of some of the essential features of a proposed contract and not a complete statement of all the essential terms, the plaintiff has failed to prove the existence of an agreement.: (Citation omitted; internal quotation marks omitted.) *Suffield Development Associates Ltd., Partnership v. Society for Savings,* 243 Conn., 832, 843, 708 A.2d 1361 (1998). 274 Conn. 33 at 51.

The court found that the jury could have reasonably found that while the parties had agreed on the essential terms of an agreement, they had not agreed on the essential terms of a second agreement, but that the first agreement was still in full force and effect. In addressing the failure of the second agreement in a footnote at page 53 of the opinion, 274 Conn. 33 at 53, footnote 16, the court found that as the parties had not agreed on whether the bank or Dress Barn would have priority in receiving the deferred billing receivables of the plaintiff, an essential term was missing.

6

In the matter now before the court, the essential terms that were missing were the identification of the risks being assumed, every construction contract being different from every other construction contract, and the amounts of the risks being assumed. These are not details in a contract or things that can be determined by reference to trade usage, standard usage, or past dealings. The nature and amount of the risks that James Gardella was being asked to assume were essential terms of any agreement, and without an agreement as to those items, there was no contract, and summary judgment must be granted.

## POINT TWO

**Rapelye v. Bailey, 3 Conn. 438 (1820), is still good law and is not reversed by its second appeal, 5 Conn. 149 (1823).**

*Rapelye v. Bailey*, 3 Conn. 438 (1820) and 5 Conn. 149 (1823), is a case that became tangled up in its pleadings, as seems to have happened in many of the earlier cases. In the first trial, the plaintiff claimed that under a letter similar to the plaintiffs' General Agreement of Indemnity no notice to the indemnitor was necessary and that notice of the litigation was sufficient to satisfy any notice requirement. The factual basis for that litigation involved a letter written by Roger Bailey to the plaintiff under which he stated that he would hold himself accountable up to $500 for certain goods to be purchased by this brother, Roswell. The plaintiffs furnished goods to Roswell Bailey for over a year.

> …By the terms of this letter, *Roswell Bailey* was to become the purchaser and debtor, and the defendant a mere surety; and his contract, *when accepted*, was literally and strictly a guaranty. "I will," said the defendant, "hold myself accountable for the payment, *should he not pay, as you and he shall agree*." The acceptance of this proposition, the amount of credit given

7

under it, the time and terms of payment agreed on, were never made known to the defendant, until the commencement of this suit. The averment "whereof the defendant had due and legal notice," is insufficient; [Emphasis as in original]. 3 Conn. 438 at 443.

The court continued:

…But where notice and request are by law necessary, there the general averment will not be sufficient, but it must be particularly set forth, that the court may judge whether the notice or request was sufficient. 1 *Chitt. Plead,* 319. *Wallis v. Scott,* 1 Stra. 88. 3 Conn. 438 at 443.

Under the court's decision in this first appeal of *Rapelye*, the plaintiffs claiming indemnity had to prove that the party alleged to be an indemnitor had to be given notice of the debts when those debts were incurred, not merely at the time the litigation was commended as claimed, and citing *Russell* v. *Clark's exers.,* 7 Cranch 69 for the proposition that it was the duty of the plaintiff in a guaranty to give the defendant immediate notice of the extent of his engagement.

The issue of notice to an indemnitor appears to be an ancient issue, and one that was decided both by the common law of England and the continental, civil law of France. The analysis can be seen by looking at the effect of the discharge of a guaranty by the extinction of its principal obligation. It has long been accepted that on the extinction of the principal obligation, the surety was discharged:

Thus saith *Pothier, Treatise on Obligations, part 2. c. 6.* As suretyship is an accessory obligation to that of the principal debtor, the extinction of the principal obligation carries with it the extinction of the suretyship also. Likewise, the security is discharged, by the novation that is made of the debt; for the security can no longer be bound for the first debt, for which it became security of the debtor, since into longer exists, having been extinguished by the novation." Though this is not common law authority, "the greatest portion of it, " according to Sir *William Jones,* "is law at *Westminster,* as well as at *Orleans.*" 3 Conn. 438 at 444-45. [Emphasis as in original.]

8

The court concluded its discussion of the discharge of a surety with a reference to a truly ancient authority, never reversed, that included a reference to the necessity of an indemnitor accepting the new obligations that the indemnitee wishes him to assume. The court concluded its decision, except for, "I advise a new trial.", 3 Conn. 438 at 444, with:

> The same doctrine is laid down by *Domat, lib. 3. tit.* 4. *sect. 5.* If the debt is innovated, between the creditor and the debtor, without the surety's obligating himself anew, his obligation does not subsist any longer." 3 Conn. 438 at 444.

In the case before the court, the alleged surety, the alleged indemnitor, James Gardella, did not obligate himself anew, and his obligation did not subsist, or exist, any longer.

In the second *Rapelye* appeal, 5 Conn. 149 (1823), the issue of notice was no longer the main issue before the court, and the appeal appears to have turned on the question of whether the first shipment of goods was to be covered and nothing further. The pleadings were amended, the issue of notice was correctly pleaded and sufficient evidence provided. The court held against the defendant, but the court was clear to point out that the extent of the defendant's liability was known prior to Roger Bailey becoming obligated to the indemnitees. Roswell Bailey had promised to be accountable for $500, as he wrote in his letter.

The court in this second appeal continued and referred to the case of *Rogers & al.* v. *Warner & al.*, 8 Johns, Rep. 119 as not analogous to *Rapelye*. In *Rogers,* a case where there was no set limit on the liability of the alleged indemnitors:

> …The defendants gave a letter of credit, on the plaintiffs, to their son, declaring a willingness to lend their names as security "for any amount they might wish." Considering that the credit was unlimited, in *point of amount;*

that the persons credited from time to time, took goods, and *paid for them*; and afterwards received another parcel, *for which they gave their note,* and to recover the amount of which, a suit was *now* brought on the preceding contract ; the court was of opinion, that the defendants were not liable. "It would be unjust and unreasonable to extend the engagement, to one *indefinite credit,* for *an indefinite time…"* [Emphasis as in original]. 5 Conn. 149 at 152.

The point remains that the plaintiffs cannot rely on a General Agreement of Indemnity, no matter how sophistically prepared, when the liability is "…one [of] *indefinite credit,* for *an indefinite time…" Rogers & al.* as cited in *Rapelye v. Bailey*, 5 Conn. 149 at 152. For an alleged indemnitee to enforce any agreement against an indemnitor, there must be a contract with all of its essential terms, and as part of that agreement, the indemnitor must know the nature and extent of the liability that he is being asked to assume.

## POINT THREE

### The Connecticut law on the validity and enforceability of indemnity agreements is not an issue.

The Plaintiffs direct the court's attention to a claimed issue about the enforceability of indemnity agreements under Connecticut law, but this is not an issue before the court. If there had been an agreement between the plaintiffs and James Gardella under which James Gardella had agreed to indemnify the plaintiffs for the losses that the plaintiffs suffered under the bonds that they issued for the projects at Aguadilla and St. Thomas, there would be no issue before the court, but there was no such agreement.

The first case the plaintiffs cite in support of their argument is *Leonard Pipe Company v. C.W. Blakeslee & Sons, Inc.,* 178 Conn. 594, 424 A.2d 277 (1979). That case

involved an indemnity agreement, and the court held that the losses which appear to have been intended to be covered by the parties were covered under the indemnity agreement. There was no question as to what construction project the indemnitor had agreed to or the extent of his financial exposure. In making this argument, no longer are the plaintiffs discussing the projects or the exposure that the indemnitor agreed to but rather the extent of that exposure for construction projects that the plaintiffs agreed to bond if the indemnitor had agreed to be liable.

The Plaintiffs continue to argue, citing state-court cases that the intention of the parties as construed from the language used is what controls. These cases involve situations involving where there is a contract, but there is no agreement between the plaintiffs and the alleged indemnitor. If the agreement did exist, then there would be something to construe. Indemnity agreements are valid and enforceable, and there is no issue about whether the plaintiffs have made any payments that were not made in good faith or were not reasonable in amount. There is nothing in the case now before the court to suggest that there was any fraud or collusion or any wrong doing on the part of the plaintiffs that would either cancel or reduce the amount that they are claiming.

It is true that if there is a contract, there is liability on the part of an indemnitor, but there is no contract. The plaintiffs have failed to provide the court with any authority for the proposition that the nature of the liability and the extent of the liability under an indemnity agreement may be omitted except for language written into the General Agreement of Indemnity by the plaintiffs that makes the indemnitors liable for "**all** loss and expense in connection with **any** bonds…" [Emphasis added]. What this case is about is the lack of an

agreement, not the extent of the loss and expense once there has been a contract agreed to which identifies the risks of the contracts and the financial exposure in the contracts that the sureties are bonding.

## POINT FOUR

### *Strictissimi juris* may not strictly apply, but the concept does.

*Strictissimi juris* is a doctrine that protects uncompensated sureties from increases, alterations, expansions, or extensions in their obligations under indemnity contracts. The plaintiffs argue that *strictissimi juris* does not apply because the plaintiffs are not trying to change the terms of the indemnity agreement. It is submitted that the plaintiffs are trying to introduce new terms into an incomplete agreement, somehow without the necessity of any acceptance, to make it a contract that the court will enforce. The doctrine may not, therefore, strictly apply.

More importantly, however, the thinking behind the doctrine applies. If an indemnitee may not increase the liability of an indemnitor when the nature and extent of the liability are spelled out in a contract, a party claiming to be an indemnitee may not increase the nature and extent of the liability of the alleged indemnitor when the nature and extent of the liability are not spelled out or included by reference in the alleged contract. The Plaintiff's have claimed in their Memorandum in Opposition that "…the rule of strictissimi juris, if it has any application at all, requires that the GAI be enforced according to its terms, entitling plaintiffs to summary judgment." (PLAINTIFFS' MEMORANDUM IN

OPPOSITION, p. 15), but as there are no essential terms as to the nature and extent of

the indemnitor's liability in the General Agreement of Indemnity there is nothing to enforce.


### CONCLUSION

As there are no terms in the General Agreement of Indemnity setting forth the

nature and extent of the claimed liability of the indemnitor, both of which are necessary for

there to be an agreement and as in order for there to be an indemnity agreement, the

indemnitor must be informed of the nature and extent of his liability and as the liability of an

indemnitor must be strictly construed and may not be increased, altered, expanded or

extended by implication, the Motion for Summary Judgment by James R. Gardella should

be granted, and he should be granted whatever other and further relief the Court deems

fair and just.


Dated: Norwalk, Connecticut
        September 12, 2005



James J. Farrell (6880)


Certificate of Service by Mail

The undersigned hereby certifies that a copy of the foregoing Answer was mailed via first class with the United States Postal Service, postage prepaid, to all counsel of record on September 12, 2005:

Constantine G. Antipas, Esq.
P.O. Box 526
Mystic, CT 06340

Benjamin D. Lentz, Esq.

Torre, Lentz, Gamell, Gary & Rittmaster, LLP
100 Jericho Quadrangle, Suite 309
Jericho, NY 11753

James L. Brawley, Esq.
Tracey Lane Russo, Esq.
Morrison & Mahoney
One Constitution Plaza, 10th Floor
Hartford, CT 06103

Richard N. Freeth, Esq.
Winget, Spadofora & Schwartzberg, LLP
102 Broad Street
Stamford, CT 06901


Dated: Norwalk, Connecticut
          September 12, 2005

                                        _____
                                        James J. Farrell